**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **Wesco Insurance Company** | **CIV ACTION NO.:  3:24-CV-00704** |
| **Plaintiff,** | |
| **v.** | |
| **Pro Interiors, LLC; Wohlsen Construction Company; M. Brett Painting Co., Inc.; Jose Aurelio Meza Garcia** | **April 16, 2024** |
| **Defendants.** | |

**<u>COMPLAINT</u>**

**<u>Parties and Jurisdiction</u>**

1.  The plaintiff, Wesco Insurance Company, is an insurance company incorporated in the state of Delaware, maintaining a principal place of business in the state of New York, and duly authorized to conduct business in the state of Connecticut.

2.  Upon information and belief, the defendant, Pro Interiors, LLC, is a limited liability construction company incorporated in the state of Connecticut, maintaining a principal place of business in the state of Connecticut with all principals and members of the company also residing within the state of Connecticut.

3.  Upon information and belief, the defendant, Wohlsen Construction Company, is a construction company incorporated in the state of Pennsylvania, maintaining a principal place of business in the state of Pennsylvania, and duly authorized to conduct business in the state of Connecticut.

1

4.      Upon information and belief, the defendant, M. Brett Painting Company, Inc., is a painting company incorporated in the state of Connecticut, maintaining a principal place of business in the state of Connecticut, and duly authorized to conduct business in the state of Connecticut.

5.      Upon information and belief, the defendant, Jose Aurelio Meza Garcia, is a resident of Bridgeport, Connecticut.

6.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. §1332 as diversity of citizenship exists and the amount in controversy, without interest and costs, exceeds the sum or value specified by statute.

**The Underlying Action**

7.      On July 7, 2021, Jose Aurelio Meza Garcia ("Garcia") filed a suit against Wholsen Construction Company and Pro Interiors, LLC in the Connecticut Superior Court in the judicial district of Bridgeport at Bridgeport, bearing docket number FBT-CV21-6108501-S (the "Underlying Lawsuit").

8.      A true and correct copy of the Complaint in the Underlying Lawsuit is attached as Exhibit A.

9.      The Complaint alleges that Wholsen Construction Company, served as the general contractor for a remodeling construction job at 211 Danbury Road, Wilton, Connecticut.

10.      The Complaint further alleges that Pro Interiors, LLC, served as the lead contractor for a painting job at 211 Danbury Road, Wilton, Connecticut.

11.      It is alleged that on August 6, 2019, Garcia was lawfully upon the premises performing work on the property painting a high ceiling on an extension ladder,

when suddenly and unexpectedly, the ladder became displaced/slipped and he fell to the floor.

12.    It is further alleged that the fall was caused by the negligence of Wohlsen Construction Company and Pro Interiors, LLC, in that they:

    a.  Failed to provide training to the plaintiff on how to properly secure a ladder to prevent it from slipping and becoming displaced;

    b.  Failed to provide training to the plaintiff on how to identify a ladder that did not have slip resistant feet;

    c.  Failed to warn the plaintiff that the ladder was not properly secured and that it did not have slip resistant feet and that was in danger of becoming displaced and slipping;

    d.  Allowed the plaintiff to use a ladder that was not properly secured and that did not have slip resistant feet when it knew or should have known that it was dangerous to do so;

    e.  Failed to inspect the work site to discover dangerous conditions such as the improperly secured ladder without slip resistant feet that the plaintiff was using when he fell;

    f.  Knew or should have known of the dangerous conditions of the improperly secured ladder without the slip resistant feet but failed to take steps to remedy it;

    g.  Created the dangerous placement and condition of the ladder on the floor and it allowed it to exist for an unreasonable amount of time;

     h.  Failed to comply with generally accepted construction industry standards in violation of Occupational Safety and Health Administration section 1926 1053(b)(7).

13.   As a direct and proximate result of the negligence of Wohlsen Construction Company and Pro Interiors, LLC, Garcia suffered loss of consciousness, frontal scalp contusion, small subcutaneous contusion, neck pain, reversal of normal cervical lordosis, intraarticular fracture of the medical & anterior aspect of the distal right tibia, and pain and suffering.

14.   On February 7, 2022, Pro Interiors, LLC, filed a third-party complaint against M. Brett Painting Co., Inc. in the Underlying Lawsuit.

15.   A true and correct copy of the third-party complaint in the Underlying Lawsuit is attached as Exhibit B.

16.   In response, on May 16, 2022, M. Brett Painting Co., Inc., filed a counterclaim against Pro Interiors, LLC.

17.   A true and correct copy of the counterclaim in the Underlying Lawsuit is attached as Exhibit C.

18.   M. Brett Painting Co., Inc.'s counterclaim alleges that Pro Interiors, LLC, breached a subcontract agreement by failing to indemnify and/or defend and/or properly name M. Brett Painting Co., Inc. as an additional insured on the required policies of insurance pursuant to the terms of the subcontract.

19.   On October 4, 2022, Wohlsen Construction Company, filed a cross-claim against Pro Interiors in the Underlying Lawsuit.

20.    A true and correct copy of the cross-claim in the Underlying Lawsuit is attached as Exhibit D.

21.    Wohlsen Construction Company's cross-claim alleges that Pro Interiors, LLC, breached a subcontract agreement by failing to indemnify and/or defend and/or properly name Wohlsen Construction Company as an additional insured on the required policies of insurance pursuant to the terms of the subcontract.

**The Insurance Policy**

22.    Wesco Insurance Company ("Wesco") insures Pro Interiors, LLC under a Commercial General Liability Policy bearing policy number NW108169201 ("Wesco Policy") for the period of February 8, 2019 to February 8, 2020.

23.    The Wesco Policy provides for Commercial General Liability coverage in Form CG 00 01 04 13, which states in pertinent part:

> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . . No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.
>
>       *              *              *
>
> b. This insurance applies to "bodily injury" and "property damage" only if:

24.     The Wesco Policy contains endorsement **Form 49-0117 07 11: Limitation of Coverage to Business Description** which modifies the policy provision quoted above as follows:

> A. **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement**, **b.** is amended and the following added:
>
> (4) The "bodily injury" or "property damage" is caused by or results from the business described in the Schedule.
>
> SCHEDULE
>
> BUSINESS DESCRIPTION:
> 98305 Paint Interior
> The following operations are included in this classification:
> -Painting interior of buildings
> -Bathtub refinishing
>
> The following operations are not included in this classification:
> -Waterproofing of foundations or building walls performed by you
> -Application of epoxy on foundations or building walls performed by you
> -Rental of equipment to others

25.     The Commercial General Liability policy Form CG 00 01 04 13, also contains the following pertinent coverage exclusions:

> **2. Exclusions**
> This insurance does not apply to:
>
> *                    *                    *
>
> **b. Contractual Liability**
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
> (1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury: or "property damage" occurs subsequent to the execution of the contract or agreement. Soley for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or property damage", provided:

    a. Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    b. Such attorneys' fees and litigation expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

    *      *      *

**d. Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

    *      *      *

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of <u>the insured</u> arising out of and in the course of:

    (a) Employment by <u>the insured</u>; or

    (b) Performing duties related to the conduct of <u>the insured's</u> business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

26.    The Wesco Policy contains endorsement **Form 49-0103-07 11: AMENDMENT – EMPLOYER'S LIABILITY EXCLUSION (EXCLUSION – BODILY INJURY TO EMPLOYEES - ABSOLUTE)**, which modifies the policy provision quoted above as follows:

7

Exclusion **e. Employer's Liability** of item **2. Exclusions**, **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, **SECTION I – COVERAGES** is replaced by the following:

e. Employers Liability

"Bodily Injury" to:

(1) An "employee" or "temporary worker" of any insured arising out of and in the course of:
   a. Employment by any insured; or
   b. Performing duties related to the conduct of an insured's business; or
(2) The spouse, child, parent, brother of sister of that "employee" or "temporary worker" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether an insured may be liable as an employer or in any other capacity; and
(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

27.    The Commercial General Liability Policy Form CG 00 01 04 13 contained within the Wesco Policy also contains the following pertinent terms regarding coverage for medical payments:

**COVERAGE C -MEDICAL PAYMENTS**

**1. Insuring Agreement**
   **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:
      **i.** On premises you own or rent;
      **ii.** On ways next to premises you own or rent; or
      **iii.** Because of your operations; provided that:
         **a.** The accident takes pace in the "coverage territory" and during the policy period;
         **b.** The expenses are incurred and reported to us within one year of the date of the accident; and
         **c.** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

8

    **b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

        **i.** First aid administered at the time of an accident;

        **ii.** Necessary medical surgical, X-ray and dental services, including prosthetic and devices; and

        **iii.** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

      *               *               *

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

      *               *               *

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

      *               *               *

**g. Coverage A Exclusions**

Excluded under Coverage A.

28. The Wesco Policy contains endorsement **Form 49-0108-07 11: BLANKET ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS**, which modifies who is an insured under the policy as follows:

    **A.** **Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only to the extent that the person or organization shown in the Schedule is held liable for your acts or omissions arising out of your ongoing operations performed for that insured.

      *               *               *

    **C.** The words "you" and "your" refer to the Named Insured shown in the Declarations.

**D.** "you wok" means work or operations performed by you on your behalf; and materials, parts or equipment furnished in connection with such work or operations.

## SCHEDULE

**Name of Person or Organization:**

**Any person or organization that the named insured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy.**

29.   The Commercial General Liability Policy Form CG 00 01 04 13 contained within the Wesco Policy also contains the following pertinent defined terms:

**SECTION V – DEFINITIONS**

**3.**  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

       *               *               *

**5.**  "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

30.   The Wesco Policy contains endorsement **Form 49-0101-07 11: CHANGES IN COMMERCIAL GENERAL LIABILITY**, which modifies the above definition as follows:

**SECTION V – DEFINITIONS** is amended as follows:

"Employee" includes a "leased worker" and a "temporary worker".

31.   The Commercial General Liability Policy Form CG 00 01 04 13 contained within the Wesco Policy also contains the following pertinent defined terms:

**SECTION V – DEFINITIONS**

       *               *               *

**9.** "Insured Contract" means:

       *               *               *

**f.** That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

*               *               *

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

32.     The Wesco Policy contains endorsement **Form 49-0101-07 11: CHANGES IN COMMERCIAL GENERAL LIABILITY**, which modifies the above definition as follows:

> **SECTION V – DEFINITIONS** is amended as follows:
>
> Paragraph 19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions. "Temporary worker" includes casual labor.

**<u>Claims for Declaratory Relief</u>**

33.     Under the terms of Wesco Policy, the Wesco Insurance Company will pay those sums that Pro Interiors becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the Wesco Policy applies.

34.     However, the insurance provided under the Wesco Policy does not apply to any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

35.     Further, the insurance provided under the Wesco Policy does not apply to "bodily injury" to a "leased worker", "temporary worker", or casual laborer of any insured

arising out of and in the course of employment by any insured or performing duties related to the conduct of any insured's business.

36. Furthermore, the Wesco Policy does not provide insurance for "bodily injury" to a "leased worker", "temporary worker", or casual laborer of any insured arising out of and in the course of employment by any insured or performing duties related to the conduct of any insured's business, regardless of whether an insured may be liable as an employer or in any other capacity or for any obligation to share damages with or repay someone else who must pay damages because of the injury.

37. At all times relevant, Jose Aurelio Meza Garcia was employed by Pro Interiors.

38. At all times relevant, Jose Aurelio Meza was employed by Pro Interiors as a "temporary worker".

39. On August 6, 2019, Jose Aurelio Meza Garcia was injured while in the course of employment of Pro Interiors or while performing duties related to the conduct of Pro Interiors' business.

40. Since the injuries sustained by Jose Aurelio Meza Garcia on August 6, 2019, arose while in the course of employment of Pro Interiors, the Wesco Insurance Company has no obligation to defend or indemnify Pro Interiors in the Underlying Lawsuit under the Wesco Policy.

41. Further, the Wesco Insurance Company will only pay those sums that an insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the Wesco Policy applies.

42.    The Wesco Policy defines an insured as any person or organization that the named insured is obligated by virtue of a written contract or agreement to provide insurance such as is afforded by this policy, but only to the extent that the person or organization is held liable for the named insured's acts or omissions arising out of the named insured's ongoing operations performed for that person or organization.

43.    The defendant, Pro Interiors, did not contract or agree to provide insurance to the defendant, Wohlsen Construction Company.

44.    Since the named insured, Pro Interiors, did not contract or agree to provide insurance to the defendant, Wohlsen Construction Company, Wohlsen Construction Company does not qualify as an insured under the Wesco Policy.

45.    Since Wohlsen Construction Company does not qualify as an insured under the Wesco Policy, the Wesco Insurance Company has no obligation to defend or indemnify the Wohlsen Construction Company in the Underlying Lawsuit under the Wesco Policy.

46.    Similarly, since M. Brett Painting Company, Inc. is not a named defendant in the Underlying Lawsuit, M. Brett Painting Company, Inc. does not qualify as an insured under the Wesco Policy, as M. Brett Painting Company, Inc. is not being held liable for the Pro Interiors acts or omissions arising out of the Pro Interiors ongoing operations performed for M. Brett Painting Company.

47.    Accordingly, since M. Brett Painting Company, Inc. does not qualify as an insured under the Wesco Policy, the Wesco Insurance Company has no obligation to

defend or indemnify the M. Brett Painting Company, Inc. in the Underlying Lawsuit under the Wesco Policy.

48. Furthermore, even if the defendants, Wohlsen Construction Company and M. Brett Painting Company, Inc. were to qualify as insureds under the Wesco Policy, the Wesco Insurance Company would nevertheless have no obligation to defend or indemnify either defendant in the Underlying Lawsuit under the Wesco Policy as the Wesco Policy does not provide insurance for "bodily injury" to a "temporary worker" of any insured, and Jose Aurelio Meza Garcia was employed as a "temporary worker" of the named insured, Pro Interiors.

49. There is a substantial question and bona fide dispute between the plaintiff, Wesco Insurance Company, and the defendants, Pro Interiors, Wohlsen Construction Company, and M. Brett Painting Company, Inc., as to the rights and obligations of the parties with respect to the Wesco Policy, specifically, whether the Policy obligates the Wohlsen Construction Company to defend or indemnify the defendants for the claims asserted against it in the Underlying Lawsuit.

50. Wesco Insurance Company has a legal and/or equitable interest at stake in this controversy based upon the foregoing.

51. Pursuant to 28 U.S.C. § 2201 et seq. and F.R.C.P. § 57, the Plaintiff, Wesco Insurance Company seeks a judicial determination as to whether the Wesco Policy issued by Wesco Insurance Company and held by Pro Interiors provides coverage to Pro Interiors, Wohlsen Construction Company, or M. Brett Painting Company, Inc. for the claims made by Dania Jimenez in the Underlying Lawsuit.

52.     All interested parties have been joined as parties to this action or have been given notice of this action.

WHEREFORE, Wesco Insurance Company requests that the Court issue a judgment declaring that:

1. Wesco Insurance Company does not have an obligation to defend Pro Interiors for the claims made by Jose Aurelio Meza Garcia, Wohlsen Construction Company, or M. Brett Painting Company, Inc. in the Underlying Lawsuit.

2. Wesco Insurance Company does not have an obligation to defend Wohlsen Construction Company for the claims made by Jose Aurelio Meza Garcia in the Underlying Lawsuit.

3. Wesco Insurance Company does not have an obligation to defend M. Brett Painting Company, Inc. for the claims made by Jose Aurelio Meza Garcia or Pro Interiors in the Underlying Lawsuit.

4. Wesco Insurance Company does not have an obligation to indemnify Pro Interiors for the claims made by Jose Aurelio Meza Garcia, Wohlsen Construction Company, or M. Brett Painting Company, Inc. in the Underlying Lawsuit.

5. Wesco Insurance Company does not have an obligation to indemnify Wohlsen Construction Company for the claims made by Jose Aurelio Meza Garcia in the Underlying Lawsuit.

6. Wesco Insurance Company does not have an obligation to indemnify M. Brett Painting Company, Inc. for the claims made by Jose Aurelio Meza Garcia or Pro Interiors in the Underlying Lawsuit.

PLAINTIFF,
WESCO INSURANCE COMPANY


By: _____*/s/ ct28236*_____
    John W. Cannavino, Jr. Esq.(ct28236)
    Ryan Ryan Deluca LLP
    1000 Lafayette Blvd., Suite 800
    Bridgeport, CT 06604
    Juris No. 438500
    Phone: 203-549-6650

## **<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that on April 12, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


                        */s/ ct28236*
               John W. Cannavino, Jr. Esq.

# EXHIBIT A

VENTURA LAW • ATTORNEYS AT LAW
2160 Main Street, Suite 2B • Bridgeport, CT 06606 • 203-800-8000 • Fax 203-579-3078

| | | |
|---|---|---|
| RETURN DATE:  AUGUST 17, 2021 | : | SUPERIOR COURT |
| JOSE AURELIO GARCIA MEZA | : | J.D. OF FAIRFIELD |
| V. | : | AT BRIDGEPORT |
| WOHLSEN CONSTRUCTION COMPANY, ET AL | : | JULY 7, 2021 |

## COMPLAINT

**FIRST COUNT:** **(JOSE AURELIO GARCIA MEZA VS. WOHLSEN CONSTRUCTION COMPANY)**

1.  At all times mentioned herein, the defendant, **WOHLSEN CONSTRUCTION COMPANY**, was and is a domestic corporation with a business address of 2321 Whitney Avenue, Suite 101, Hamden, Connecticut.

2.  At all times mentioned herein, the defendant, **WOHLSEN CONSTRUCTION COMPANY**, its agents, servants and/or employees owned, possessed, controlled, managed, and/or maintained the premises at 211 Danbury Road, Wilton, Connecticut.

3.  At all times material herein, the defendant, **WOHLSEN CONSTRUCTION COMPANY**, served as the general contractor for a remodeling construction job at 211 Danbury Road, Wilton, Connecticut.

4.  On August 6, 2019, the plaintiff, **JOSE AURELIO GARCIA MEZA**, was lawfully upon the premises performing work on the property painting a high ceiling on an extension ladder, when suddenly and unexpectedly, the ladder became displaced/slipped and he fell to the floor.

5.  The fall was caused by the negligence of the defendant, **WOHLSEN CONSTRUCTION COMPANY**, its agents, servants and/or employees in one or more of the

1

VENTURA LAW • ATTORNEYS AT LAW
2160 Main Street, Suite 2B • Bridgeport, CT 06606 • 203-800-8000 • Fax 203-579-3078

following ways, in that it:

    a.   Failed to provide training to the plaintiff on how to properly secure a ladder to prevent it from slipping and becoming displaced;

    b.   Failed to provide training to the plaintiff on how to identify a ladder that did not have slip resistant feet;

    c. Failed to warn the plaintiff that the ladder was not properly secured and that it did not have slip resistant feet and that was in danger of becoming displaced and slipping;

    d. Allowed the plaintiff to use a ladder that was not properly secured and that did not have slip resistant feet when it knew or should have known that it was dangerous to do so;

    e. Failed to inspect the work site to discover dangerous conditions such as the improperly secured ladder without slip resistant feet that the plaintiff was using when he fell;

    f.  Knew or should have known of the dangerous condition of the improperly secured ladder without the slip resistant feet but failed to take steps to remedy it;

    g. Created the dangerous placement and condition of the ladder on the floor and it allowed it to exist for an unreasonable amount of time;

    h. Failed to comply with generally accepted construction industry standards in violation of Occupational Safety and Health Administration section 1926 1053(b)(7).

6.   As a direct and proximate result of the negligence of the defendant, **WOHLSEN CONSTRUCTION COMPANY**, its agents, servants, and/or employees, the plaintiff, **JOSE AURELIO GARCIA MEZA**, suffered the following injuries, some or all of which may be permanent in nature:

2

VENTURA LAW • ATTORNEYS AT LAW

2160 Main Street, Suite 2B • Bridgeport, CT 06606 • 203-800-8000 • Fax 203-579-3078

a.  Loss of consciousness;
b.  Frontal scalp contusion;
c.  Small subcutaneous contusion overlying the left superior occiput;
d.  Neck pain;
e.  Reversal of normal cervical lordosis;
f.  Cervical strain;
g.  Right sided chest pain;
h.  Low back pain;
i.  Lumbosacral strain;
j.  Severe bilateral foot and ankle pain;
k.  Post traumatic swelling of right ankle and hindfoot;
l.  Posterior tibial tendinitis;
m.  Intraarticular fracture of the medial & anterior aspect of the distal right tibia;
n.  Numbness in right foot;
o.  PPI to right ankle 20% which will increase due to degeneration;
p.  Tendonitis of the left ankle;
q.  PPI left ankle 5%;
r.  Headaches and
s.  Pain and suffering, both mental and physical.

7.      As a further direct and proximate result of the negligence of the defendant, **WOHLSEN CONSTRUCTION COMPANY**, its agents, servants, and/or employees, the plaintiff, **JOSE AURELIO GARCIA MEZA**, was forced to expend money for hospital and medical care, medicines, diagnostic tests and therapy, all necessary to his physical recovery, and may be forced to expend additional sums in the future for the same or similar purposes, all to his financial loss.

8.      As a further direct and proximate result of the negligence of the defendant, **WOHLSEN CONSTRUCTION COMPANY**, its agents, servants, and/or employees, the plaintiff, **JOSE AURELIO GARCIA MEZA**, was unable, and remains unable to pursue, to participate in and to enjoy his usual activities.

3

VENTURA LAW • *ATTORNEYS AT LAW*
2160 Main Street, Suite 2B • Bridgeport, CT 06606 • 203-800-8000 • Fax 203-579-3078

9.      As a further result of the negligence of the defendant, **WOHLSEN CONSTRUCTION COMPANY**, the plaintiff, **JOSE AURELIO GARCIA MEZA**, was unable to work, and his earning capacity may be impaired, all to his financial detriment.

**SECOND COUNT:** (JOSE AURELIO GARCIA MEZA VS. PRO INTERIORS, LLC)

1.  At all times mentioned herein, the defendant, **PRO INTERIORS, LLC**, was and is a domestic corporation with a business address of 502 Huntington Street, Shelton, Connecticut.

2.  At all times mentioned herein, the defendant, **PRO INTERIORS, LLC**, its agents, servants and/or employees owned, possessed, controlled, managed, and/or maintained the premises at 211 Danbury Road, Wilton, Connecticut.

3.  At all times material herein, the defendant, **PRO INTERIORS, LLC**, served as the lead contractor for a painting job at 211 Danbury Road, Wilton, Connecticut.

4.  On August 6, 2019, the plaintiff, **JOSE AURELIO GARCIA MEZA**, was lawfully upon the premises performing work on the property painting a high ceiling on an extension ladder, when suddenly and unexpectedly, the ladder became displaced/slipped and he fell to the floor.

5.  The fall was caused by the negligence of the defendant, **PRO INTERIORS LLC**, its agents, servants and/or employees in one or more of the following ways, in that it:

    a.   Failed to provide training to the plaintiff on how to properly secure a ladder to prevent it from slipping and becoming displaced;

    b.   Failed to provide training to the plaintiff on how to identify a ladder that did not have slip resistant feet;

VENTURA LAW • ATTORNEYS AT LAW
2160 Main Street, Suite 2B • Bridgeport, CT 06606 • 203-800-8000 • Fax 203-579-3078

c. Failed to warn the plaintiff that the ladder was not properly secured and that it did not have slip resistant feet and that was in danger of becoming displaced and slipping;

d. Allowed the plaintiff to use a ladder that was not properly secured and that did not have slip resistant feet when it knew or should have known that it was dangerous to do so;

e. Failed to inspect the work site to discover dangerous conditions such as the improperly secured ladder without slip resistant feet that the plaintiff was using when he fell;

f. Knew or should have known of the dangerous condition of the improperly secured ladder without the slip resistant feet but failed to take steps to remedy it;

g. Created the dangerous placement and condition of the ladder on the floor and it allowed it to exist for an unreasonable amount of time;

h. Failed to comply with generally accepted construction industry standards in violation of Occupational Safety and Health Administration section 1926 1053(b)(7).

6.   As a direct and proximate result of the negligence of the defendant, **PRO INTERIORS, LLC**, its agents, servants, and/or employees, the plaintiff, **JOSE AURELIO GARCIA MEZA**, suffered the following injuries, some or all of which may be permanent in nature:

    a.   Loss of consciousness;
    b.   Frontal scalp contusion;
    c.   Small subcutaneous contusion overlying the left superior occiput;
    d.   Neck pain;
    e.   Reversal of normal cervical lordosis;
    f.   Cervical strain;
    g.   Right sided chest pain;
    h.   Low back pain;
    i.   Lumbosacral strain;
    j.   Severe bilateral foot and ankle pain;
    k.   Post traumatic swelling of right ankle and hindfoot;
    l.   Posterior tibial tendinitis;
    m.   Intraarticular fracture of the medial & anterior aspect of the distal right tibia;

VENTURA LAW • *ATTORNEYS AT LAW*
2160 Main Street, Suite 2B • Bridgeport, CT 06606 • 203-800-8000 • Fax 203-579-3078

n.  Numbness in right foot;
o.  PPI to right ankle 20% which will increase due to degeneration;
p.  Tendonitis of the left ankle;
q.  PPI left ankle 5%;
r.  Headaches and
s.  Pain and suffering, both mental and physical.

7.    As a further direct and proximate result of the negligence of the defendant, **PRO INTERIORS, LLC**, its agents, servants, and/or employees, the plaintiff, **JOSE AURELIO GARCIA MEZA**, was forced to expend money for hospital and medical care, medicines, diagnostic tests and therapy, all necessary to his physical recovery, and may be forced to expend additional sums in the future for the same or similar purposes, all to his financial loss.

8.    As a further direct and proximate result of the negligence of the defendant, **PRO INTERIORS, LLC**, its agents, servants, and/or employees, the plaintiff, **JOSE AURELIO GARCIA MEZA**, was unable, and remains unable to pursue, to participate in and to enjoy his usual activities.

9.    As a further result of the negligence of the defendant, **PRO INTERIORS, LLC**, the plaintiff, **JOSE AURELIO GARCIA MEZA**, was unable to work, and his earning capacity may be impaired, all to his financial detriment.

**WHEREFORE,** the plaintiff claims money damages.

The Plaintiff,
JOSE AURELIO GARCIA MEZA


By__413056_____
Peter Baez, Esq.
VENTURA LAW
2160 Main Street, Suite 2B
Bridgeport, CT 06606
(203) 800-8000 / Juris No. 414924

TO THE CLERK OF THE COURT:
Please enter our appearance
on behalf of the plaintiff:
Ventura Law

RETURN DATE:  AUGUST 17, 2021     :    SUPERIOR COURT

JOSE AURELIO GARCIA MEZA     :    J.D. OF FAIRFIELD

V.                  :    AT BRIDGEPORT

WOHLSEN CONSTRUCTION COMPANY, ET AL   :    JULY 7, 2021

## **STATEMENT OF AMOUNT IN DEMAND**

The amount of money damages claimed is greater than Fifteen Thousand Dollars ($15,000.00), exclusive of interest and costs.

The Plaintiff,
JOSE AURELIO GARCIA MEZA


By: _____413056_____
Peter Baez, Esq.
Ventura Law
2160 Main Street, Suite 2B
Bridgeport, CT 06606
(203) 800-8000 / Juris No. 414924

VENTURA LAW • ATTORNEYS AT LAW
2160 Main Street, Suite 2B • Bridgeport, CT 06606 • 203-800-8000 • Fax 203-579-3078

# EXHIBIT B

# SUMMONS - CIVIL

JD-CV-1  Rev. 4-16
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259,  P.B. §§ 3-1 through 3-21, 8-1, 10-13

STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.ct.gov

**See other side for instructions**

- [ ] "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.
- [ ] "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.
- [X] "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* |
|---|---|---|
| **1061 Main Street, Bridgeport 06604** | **( 203 )579-6527** | **March**  Month     **15**  Day    **2022**  Year |

| [X] Judicial District | [ ] G.A. Number: | At *(Town in which writ is returnable)* (C.G.S. §§ 51-346, 51-349) | Case type code *(See list on page 2)* |
|---|---|---|---|
| [ ] Housing Session | | **Bridgeport** | Major: **T**   Minor: **90** |

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented  *(Number, street town and zip code)* | Juris number *(to be entered by attorney only)* |
|---|---|
| **Solimene & Secondo, LLP, 1501 East Main Street, Suite 204, Meriden, CT 06450** | **436021** |

| Telephone number *(with area code)* | Signature of Plaintiff *(If self-represented)* |
|---|---|
| **( 203 )  599-0170** | |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book. | [X] Yes   [ ] No | Email address for delivery of papers under Section 10-13 *(if agreed to)*  **coccomo@ss-llp.com** |
|---|---|---|

| Number of Plaintiffs: **1** | Number of Defendants: **1** | [ ] Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|
| **First Plaintiff** | Name:  **Pro Interiors, LLC**<br>Address: **502 Huntington Street, Shelton, CT 06484** | P-01 |
| **Additional Plaintiff** | Name:<br>Address: | P-02 |
| **First Defendant** | Name:  **M. Brett Painting Company, Inc. , 458 Shore Road, Old Lyme, CT 06371**<br>Address: **Agent for Service: Mark Brett, 458 Shore Rd., Old Lyme, CT 06371** | D-01 |
| **Additional Defendant** | Name:<br>Address: | D-02 |
| **Additional Defendant** | Name:<br>Address: | D-03 |
| **Additional Defendant** | Name:<br>Address: | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at  *www.jud.ct.gov*  under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at  *www.jud.ct.gov*  under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed *(Sign and "X" proper box)*  *Cynthia J. Coccomo* | [X] Commissioner of the Superior Court  [ ] Assistant Clerk | Name of Person Signing at Left  **Cynthia J. Coccomo** | Date signed  **02/07/2022** |
|---|---|---|---|

| If this Summons is signed by a Clerk: | | For Court Use Only |
|---|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.<br>b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.<br>c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.<br>d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | | File Date |

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | Date | Docket Number |
|---|---|---|---|
| | | | |

(Page 1 of 2)

**Instructions**

1. Type or print legibly; sign summons.
2. Prepare or photocopy a summons for each defendant.
3. Attach the original summons to the original complaint, and attach a copy of the summons to each copy of the complaint. Also, if there are more than 2 plaintiffs or more than 4 defendants prepare form JD-CV-2 and attach it to the original and all copies of the complaint.
4. After service has been made by a proper officer, file original papers and officer's return with the clerk of court.
5. Do not use this form for the following actions:

    (a) Family matters (for example divorce, child support, custody, paternity, and visitation matters)
    (b) Summary Process actions
    (c) Applications for change of name
    (d) Probate appeals
    (e) Administrative appeals

    (f) Proceedings pertaining to arbitration
    (g) Any actions or proceedings in which an attachment, garnishment or replevy is sought
    (h) Entry and Detainer proceedings
    (i) Housing Code Enforcement actions

---

**ADA NOTICE**

The Judicial Branch of the State of Connecticut complies with the Americans with Disabilities Act (ADA). If you need a reasonable accommodation in accordance with the ADA, contact a court clerk or an ADA contact person listed at *www.jud.ct.gov/ADA*.

---

## Case Type Codes

| Major Description | Codes Major/Minor | Minor Description |
|---|---|---|
| **Contracts** | C 00 | Construction - All other |
| | C 10 | Construction - State and Local |
| | C 20 | Insurance Policy |
| | C 30 | Specific Performance |
| | C 40 | Collections |
| | C 90 | All other |
| **Eminent Domain** | E 00 | State Highway Condemnation |
| | E 10 | Redevelopment Condemnation |
| | E 20 | Other State or Municipal Agencies |
| | E 30 | Public Utilities & Gas Transmission Companies |
| | E 90 | All other |
| **Miscellaneous** | M 00 | Injunction |
| | M 10 | Receivership |
| | M 20 | Mandamus |
| | M 30 | Habeas Corpus (extradition, release from Penal Institution) |
| | M 40 | Arbitration |
| | M 50 | Declaratory Judgment |
| | M 63 | Bar Discipline |
| | M 66 | Department of Labor Unemployment Compensation Enforcement |
| | M 68 | Bar Discipline - Inactive Status |
| | M 70 | Municipal Ordinance and Regulation Enforcement |
| | M 80 | Foreign Civil Judgments - C.G.S. 52-604 & C.G.S. 50a-30 |
| | M 83 | Small Claims Transfer to Regular Docket |
| | M 84 | Foreign Protective Order |
| | M 90 | All other |
| **Housing** | H 10 | Housing  - Return of Security Deposit |
| | H 12 | Housing  - Rent and/or Damages |
| | H 40 | Housing  - Audita Querela/Injunction |
| | H 50 | Housing  - Administrative Appeal |
| | H 60 | Housing  - Municipal Enforcement |
| | H 90 | Housing  - All Other |

| Major Description | Codes Major/Minor | Minor Description |
|---|---|---|
| **Property** | P 00 | Foreclosure |
| | P 10 | Partition |
| | P 20 | Quiet Title/Discharge of Mortgage or Lien |
| | P 30 | Asset Forfeiture |
| | P 90 | All other |
| **Torts (Other than Vehicular)** | T 02 | Defective Premises - Private - Snow or Ice |
| | T 03 | Defective Premises - Private - Other |
| | T 11 | Defective Premises - Public - Snow or Ice |
| | T 12 | Defective Premises - Public - Other |
| | T 20 | Products Liability - Other than Vehicular |
| | T 28 | Malpractice - Medical |
| | T 29 | Malpractice - Legal |
| | T 30 | Malpractice - All other |
| | T 40 | Assault and Battery |
| | T 50 | Defamation |
| | T 61 | Animals - Dog |
| | T 69 | Animals - Other |
| | T 70 | False Arrest |
| | T 71 | Fire Damage |
| | T 90 | All other |
| **Vehicular Torts** | V 01 | Motor Vehicles* - Driver and/or Passenger(s) vs. Driver(s) |
| | V 04 | Motor Vehicles* - Pedestrian vs. Driver |
| | V 05 | Motor Vehicles* - Property Damage only |
| | V 06 | Motor Vehicle* - Products Liability Including Warranty |
| | V 09 | Motor Vehicle* - All other |
| | V 10 | Boats |
| | V 20 | Airplanes |
| | V 30 | Railroads |
| | V 40 | Snowmobiles |
| | V 90 | All other |
| | | *Motor Vehicles include cars, trucks, motorcycles, and motor scooters. |
| **Wills, Estates and Trusts** | W 10 | Construction of Wills and Trusts |
| | W 90 | All other |

RETURN DATE:  MARCH 15, 2022

| | |
|---|---|
| DOCKET NO: FBT-CV21-6108501-S | * SUPERIOR COURT |
| | * |
| JOSE AURELIO GARCIA MEZA, | * J. D. OF FAIRFIELD |
|      Plaintiff | * |
|  v. | * AT BRIDGEPORT |
| | * |
| WOHLSEN CONSTRUCTION COMPANY, | * |
| ET AL. | * |
|      Defendants | * FEBRUARY 7, 2022 |
| | * |

## THIRD-PARTY COMPLAINT

The Third-Party Plaintiff, Pro Interiors, LLC, hereby assert the following claims against the Third-Party Defendant, M. Brett Painting Co., Inc.

### Count One:  Common Law Indemnification

1. By a Complaint dated July 7, 2021, the Plaintiff in the above-captioned matter, Jose Aurelio Garcia Meza ("Plaintiff"), commenced a personal injury action against Wohlsen Construction and Pro Interiors, LLC returnable to the above-referenced court on August 17, 2021.  A copy of the Plaintiff's Complaint is attached hereto as Exhibit A.

2. The Plaintiff alleges in his Complaint that on or about August 6, 2019, he fell to the floor from an extension ladder when the ladder became displaced/slipped while the Plaintiff was painting a ceiling at premises located at 211 Danbury Road, Wilton, Connecticut (the "Premises").

3.      The Plaintiff further alleges that Pro Interiors, LLC, its agents, servants and/or employees owned, possessed, controlled, managed and/or maintained the premises, and that Pro Interiors, LLC was negligent.

4.      The Plaintiff further alleges that as a result of Pro Interiors, LLC's negligence, he has suffered damages.

5.      The Third-Party Defendant, M. Brett Painting Co., Inc., was at all relevant times the painting contractor at the Premises where the alleged accident occurred.

6.      At all times relevant to this action, M. Brett Painting Co., Inc. controlled, managed and/or maintained the situation that led to the Plaintiff's injury, and it was responsible for the ladder from which the plaintiff fell, to the exclusion of Pro Interiors, LLC.

7.      Pro Interiors, LLC denies that it was in any way responsible for the Plaintiff's injuries and damages, if any.

8.      If the Plaintiff suffered damages in the manner alleged in the Complaint, the damages were caused by the active negligence of the third-party Defendant, M. Brett Painting Co., Inc., who was negligent in one or more of the following ways, in that it:

      a.      Allowed the Plaintiff to enter the work site and proceed to use a ladder to paint, when the Plaintiff was not authorized to do so;

      b.      Failed to provide training to the Plaintiff on how to properly secure a ladder to prevent it from slipping and becoming displaced;

      c.      Failed to provide training to the Plaintiff on how to identify a ladder that did not have slip resistant feet;

d.      Failed to warn the Plaintiff that the ladder was not properly secured and that it did not have slip resistant feet and that was in danger of becoming displaced and slipping;

e.      Allowed the Plaintiff to use a ladder that was not properly secured and that did not have slip resistant feet when it knew or should have known that it was dangerous to do so;

f.      Failed to inspect the work site to discover dangerous conditions such as the improperly secured ladder without slip resistant feet that the Plaintiff was using when he fell;

g.      Knew or should have known of the dangerous condition of the improperly secured ladder without the slip resistant feet but failed to take steps to remedy it;

h.      Created the dangerous placement and condition of the ladder on the floor and it allowed it to exist for an unreasonable amount of time;

i.      Failed to comply with generally accepted construction industry standards in violation of Occupational Safety and Health Administration section 1926 1053(b )(7).

9.      To the extent that Pro Interiors, LLC is found negligent, any such negligence was passive and the negligence of M. Brett Painting Co., Inc. was active.  The negligence of M. Brett Painting Co., Inc. was the proximate cause of the Plaintiff's damages, if any.

10.     Pro Interiors, LLC did not know of M. Brett Painting Co., Inc.'s negligence, nor did he have reason to anticipate that M. Brett Painting Co., Inc. would be negligent.

11.     Pro Interiors, LLC could have reasonably relied upon M. Brett Painting Co., Inc. not to be negligent.

12.     If Pro Interiors, LLC is held liable to the Plaintiff, M. Brett Painting Co., Inc. is obliged to reimburse and indemnify Impetus for any and all losses arising out of this cause of action, including damages, interest, costs, and legal fees.


    **WHEREFORE,** the Defendant/Third Party Plaintiff, Pro Interiors, LLC, seeks the following relief:

1.  Indemnification for all sums awarded to the Plaintiff including interest;

2.  Attorney's fees and costs incurred in the defense of the action brought by the Plaintiff; and

3.  Such other relief as the Court deems just and proper.


                              DEFENDANT,
                              PRO INTERIORS, LLC

                              /s/ 307848
                              Cynthia J. Coccomo
                              Solimene & Secondo, LLP
                              1501 East Main Street, Suite 204
                              Meriden, CT 06450
                              Juris No. 436021
                              (203) 599-0170

<u>**CERTIFICATION**</u>

       This is to certify that a copy of the foregoing has been sent to the following on this 17th day of February, 2022.

***Sent via electronic mail:***

**Counsel for the plaintiff, Jose Aurelio Garcia Meza**
Peter Baez, Esq.
Ventura Law
2160 Main Street, Suite 2B
Bridgeport, CT  06606
E:  peter@venturalaw.com
E:  cheryl@venturalaw.com

**Counsel for the Defendant, Wohlsen Construction Company**
Gina Galullo, Esq.
Law Offices of Jeffrey Apuzzo
10 Waterside Drive
Suite 102
Farmington, CT 06032
E: gina.galullo@selective.com

                                    /s/  307848
                                    Cynthia J. Coccomo
                                    Sabina K. Kania

EXHIBIT A

VENTURA LAW • *ATTORNEYS AT LAW*
2160 Main Street, Suite 2B • Bridgeport, CT 06606 • 203-800-8000 • Fax 203-579-3078

| | | |
|---|---|---|
| RETURN DATE:  AUGUST 17, 2021 | : | SUPERIOR COURT |
| JOSE AURELIO GARCIA MEZA | : | J.D. OF FAIRFIELD |
| V. | : | AT BRIDGEPORT |
| WOHLSEN CONSTRUCTION COMPANY, ET AL | : | JULY 7, 2021 |

### COMPLAINT

**FIRST COUNT:** **(JOSE AURELIO GARCIA MEZA VS. WOHLSEN CONSTRUCTION COMPANY)**

1. At all times mentioned herein, the defendant, **WOHLSEN CONSTRUCTION COMPANY**, was and is a domestic corporation with a business address of 2321 Whitney Avenue, Suite 101, Hamden, Connecticut.

2. At all times mentioned herein, the defendant, **WOHLSEN CONSTRUCTION COMPANY**, its agents, servants and/or employees owned, possessed, controlled, managed, and/or maintained the premises at 211 Danbury Road, Wilton, Connecticut.

3. At all times material herein, the defendant, **WOHLSEN CONSTRUCTION COMPANY**, served as the general contractor for a remodeling construction job at 211 Danbury Road, Wilton, Connecticut.

4. On August 6, 2019, the plaintiff, **JOSE AURELIO GARCIA MEZA**, was lawfully upon the premises performing work on the property painting a high ceiling on an extension ladder, when suddenly and unexpectedly, the ladder became displaced/slipped and he fell to the floor.

5. The fall was caused by the negligence of the defendant, **WOHLSEN CONSTRUCTION COMPANY**, its agents, servants and/or employees in one or more of the

1

following ways, in that it:

    a.  Failed to provide training to the plaintiff on how to properly secure a ladder to prevent it from slipping and becoming displaced;

    b.  Failed to provide training to the plaintiff on how to identify a ladder that did not have slip resistant feet;

    c. Failed to warn the plaintiff that the ladder was not properly secured and that it did not have slip resistant feet and that was in danger of becoming displaced and slipping;

    d. Allowed the plaintiff to use a ladder that was not properly secured and that did not have slip resistant feet when it knew or should have known that it was dangerous to do so;

    e. Failed to inspect the work site to discover dangerous conditions such as the improperly secured ladder without slip resistant feet that the plaintiff was using when he fell;

    f.  Knew or should have known of the dangerous condition of the improperly secured ladder without the slip resistant feet but failed to take steps to remedy it;

    g. Created the dangerous placement and condition of the ladder on the floor and it allowed it to exist for an unreasonable amount of time;

    h. Failed to comply with generally accepted construction industry standards in violation of Occupational Safety and Health Administration section 1926 1053(b)(7).

    6.  As a direct and proximate result of the negligence of the defendant, **WOHLSEN CONSTRUCTION COMPANY**, its agents, servants, and/or employees, the plaintiff, **JOSE AURELIO GARCIA MEZA**, suffered the following injuries, some or all of which may be permanent in nature:

VENTURA LAW • ATTORNEYS AT LAW
2160 Main Street, Suite 2B • Bridgeport, CT 06606 • 203-800-8000 • Fax 203-579-3078

2

VENTURA LAW • ATTORNEYS AT LAW
2160 Main Street, Suite 2B • Bridgeport, CT 06606 • 203-800-8000 • Fax 203-579-3078

a.  Loss of consciousness;
b.  Frontal scalp contusion;
c.  Small subcutaneous contusion overlying the left superior occiput;
d.  Neck pain;
e.  Reversal of normal cervical lordosis;
f.  Cervical strain;
g.  Right sided chest pain;
h.  Low back pain;
i.  Lumbosacral strain;
j.  Severe bilateral foot and ankle pain;
k.  Post traumatic swelling of right ankle and hindfoot;
l.  Posterior tibial tendinitis;
m.  Intraarticular fracture of the medial & anterior aspect of the distal right tibia;
n.  Numbness in right foot;
o.  PPI to right ankle 20% which will increase due to degeneration;
p.  Tendonitis of the left ankle;
q.  PPI left ankle 5%;
r.  Headaches and
s.  Pain and suffering, both mental and physical.

7.      As a further direct and proximate result of the negligence of the defendant, **WOHLSEN CONSTRUCTION COMPANY**, its agents, servants, and/or employees, the plaintiff, **JOSE AURELIO GARCIA MEZA**, was forced to expend money for hospital and medical care, medicines, diagnostic tests and therapy, all necessary to his physical recovery, and may be forced to expend additional sums in the future for the same or similar purposes, all to his financial loss.

8.      As a further direct and proximate result of the negligence of the defendant, **WOHLSEN CONSTRUCTION COMPANY**, its agents, servants, and/or employees, the plaintiff, **JOSE AURELIO GARCIA MEZA**, was unable, and remains unable to pursue, to participate in and to enjoy his usual activities.

3

VENTURA LAW • *ATTORNEYS AT LAW*
2160 Main Street, Suite 2B • Bridgeport, CT 06606 • 203-800-8000 • Fax 203-579-3078

9. As a further result of the negligence of the defendant, **WOHLSEN CONSTRUCTION COMPANY**, the plaintiff, **JOSE AURELIO GARCIA MEZA**, was unable to work, and his earning capacity may be impaired, all to his financial detriment.

**SECOND COUNT: (JOSE AURELIO GARCIA MEZA VS. PRO INTERIORS, LLC)**

1. At all times mentioned herein, the defendant, **PRO INTERIORS, LLC**, was and is a domestic corporation with a business address of 502 Huntington Street, Shelton, Connecticut.

2. At all times mentioned herein, the defendant, **PRO INTERIORS, LLC**, its agents, servants and/or employees owned, possessed, controlled, managed, and/or maintained the premises at 211 Danbury Road, Wilton, Connecticut.

3. At all times material herein, the defendant, **PRO INTERIORS, LLC**, served as the lead contractor for a painting job at 211 Danbury Road, Wilton, Connecticut.

4. On August 6, 2019, the plaintiff, **JOSE AURELIO GARCIA MEZA**, was lawfully upon the premises performing work on the property painting a high ceiling on an extension ladder, when suddenly and unexpectedly, the ladder became displaced/slipped and he fell to the floor.

5. The fall was caused by the negligence of the defendant, **PRO INTERIORS LLC**, its agents, servants and/or employees in one or more of the following ways, in that it:

   a. Failed to provide training to the plaintiff on how to properly secure a ladder to prevent it from slipping and becoming displaced;

   b. Failed to provide training to the plaintiff on how to identify a ladder that did not have slip resistant feet;

4

VENTURA LAW • ATTORNEYS AT LAW

2160 Main Street, Suite 2B • Bridgeport, CT 06606 • 203-800-8000 • Fax 203-579-3078

c. Failed to warn the plaintiff that the ladder was not properly secured and that it did not have slip resistant feet and that was in danger of becoming displaced and slipping;

d. Allowed the plaintiff to use a ladder that was not properly secured and that did not have slip resistant feet when it knew or should have known that it was dangerous to do so;

e. Failed to inspect the work site to discover dangerous conditions such as the improperly secured ladder without slip resistant feet that the plaintiff was using when he fell;

f. Knew or should have known of the dangerous condition of the improperly secured ladder without the slip resistant feet but failed to take steps to remedy it;

g. Created the dangerous placement and condition of the ladder on the floor and it allowed it to exist for an unreasonable amount of time;

h. Failed to comply with generally accepted construction industry standards in violation of Occupational Safety and Health Administration section 1926 1053(b)(7).

6.   As a direct and proximate result of the negligence of the defendant, **PRO INTERIORS, LLC**, its agents, servants, and/or employees, the plaintiff, **JOSE AURELIO GARCIA MEZA**, suffered the following injuries, some or all of which may be permanent in nature:

a.  Loss of consciousness;
b.  Frontal scalp contusion;
c.  Small subcutaneous contusion overlying the left superior occiput;
d.  Neck pain;
e.  Reversal of normal cervical lordosis;
f.  Cervical strain;
g.  Right sided chest pain;
h.  Low back pain;
i.  Lumbosacral strain;
j.  Severe bilateral foot and ankle pain;
k.  Post traumatic swelling of right ankle and hindfoot;
l.  Posterior tibial tendinitis;
m.  Intraarticular fracture of the medial & anterior aspect of the distal right tibia;

5

n.  Numbness in right foot;
o.  PPI to right ankle 20% which will increase due to degeneration;
p.  Tendonitis of the left ankle;
q.  PPI left ankle 5%;
r.  Headaches and
s.  Pain and suffering, both mental and physical.

7.      As a further direct and proximate result of the negligence of the defendant, **PRO INTERIORS, LLC**, its agents, servants, and/or employees, the plaintiff, **JOSE AURELIO GARCIA MEZA**, was forced to expend money for hospital and medical care, medicines, diagnostic tests and therapy, all necessary to his physical recovery, and may be forced to expend additional sums in the future for the same or similar purposes, all to his financial loss.

8.      As a further direct and proximate result of the negligence of the defendant, **PRO INTERIORS, LLC**, its agents, servants, and/or employees, the plaintiff, **JOSE AURELIO GARCIA MEZA**, was unable, and remains unable to pursue, to participate in and to enjoy his usual activities.

9.      As a further result of the negligence of the defendant, **PRO INTERIORS, LLC**, the plaintiff, **JOSE AURELIO GARCIA MEZA**, was unable to work, and his earning capacity may be impaired, all to his financial detriment.

6

**WHEREFORE,** the plaintiff claims money damages.


The Plaintiff,
JOSE AURELIO GARCIA MEZA


By__413056_____
Peter Baez, Esq.
VENTURA LAW
2160 Main Street, Suite 2B
Bridgeport, CT 06606
(203) 800-8000 / Juris No. 414924


TO THE CLERK OF THE COURT:
Please enter our appearance
on behalf of the plaintiff:
Ventura Law

VENTURA LAW • *ATTORNEYS AT LAW*
2160 Main Street, Suite 2B • Bridgeport, CT 06606 • 203-800-8000 • Fax 203-579-3078

7

RETURN DATE:  AUGUST 17, 2021      :      SUPERIOR COURT

JOSE AURELIO GARCIA MEZA      :      J.D. OF FAIRFIELD

V.      :      AT BRIDGEPORT

WOHLSEN CONSTRUCTION COMPANY, ET AL      :      JULY 7, 2021

## STATEMENT OF AMOUNT IN DEMAND

The amount of money damages claimed is greater than Fifteen Thousand Dollars ($15,000.00), exclusive of interest and costs.

The Plaintiff,
JOSE AURELIO GARCIA MEZA


By: _____413056_____
Peter Baez, Esq.
Ventura Law
2160 Main Street, Suite 2B
Bridgeport, CT 06606
(203) 800-8000 / Juris No. 414924

VENTURA LAW • ATTORNEYS AT LAW
2160 Main Street, Suite 2B • Bridgeport, CT 06606 • 203-800-8000 • Fax 203-579-3078

DOCKET NO: FBTCV216108501S

ORDER    422677

SUPERIOR COURT

MEZA GARCIA, JOSE AURELIO
    V.
WOHLSEN CONSTRUCTION COMPANY
Et Al

JUDICIAL DISTRICT OF FAIRFIELD
   AT BRIDGEPORT

1/27/2022

<u>ORDER</u>

ORDER REGARDING:
01/14/2022 117.00 MOTION TO IMPLEAD

The foregoing, having been considered by the Court, is hereby:

ORDER: GRANTED

It appearing that the foregoing motion should be granted, it is hereby

Ordered, that on or before 3 / 3 /2022 the plaintiff amend his complaint to state facts showing the interest of M. Brett Painting Co., Inc. in this action and summon M. Brett Painting Co., Inc. to appear as a defendant in this action on or before the second day following 3 /15 /2022, by causing some proper officer to serve on him in the manner prescribed by law a true and attested copy of this order, a true and attested or certified copy of the complaint in this action as amended, and a Summons Civil Form JD-CV-1 and due return make

Judicial Notice (JDNO) was sent regarding this order.

422677
_____

Judge: THEODORE R TYMA

This document may be signed or verified electronically and has the same validity and status as a document with a physical (pen-to-paper) signature. For more information, see Section I.E. of the *State of Connecticut Superior Court E-Services Procedures and Technical Standards* (https://jud.ct.gov/external/super/E-Services/e-standards.pdf), section 51-193c of the Connecticut General Statutes and Connecticut Practice Book Section 4-4.

STATE OF CONNECTICUT    )
                               SS: Old Lyme        February 15, 2022
COUNTY OF NEW LONDON   )

        Then and there by virtue hereof, and by the direction of the plaintiff's attorney, I made due and legal service of the within original **Writ, Summons – Civil, Third Party Complaint, Certification, Order and Exhibit A** by leaving a true and attested copy of the within original with and in the hands of **Mark Brett, Agent for Service for the within named defendant M. Brett Painting Company Inc at 458 Shore Road** in the town of **Old Lyme**.

        The within is the original **Writ, Summons – Civil, Third Party Complaint, Certification, Order and Exhibit A** with my doings hereon endorsed.

                                              Attest:

                                              Travis H. Romano
                                              Connecticut State Marshal
                                              New London County

**Fees:**

| | |
|---|---|
| Service | $40.00 |
| Endorsements | $1.20 |
| Travel | $50.00 |
| Pages | $17.00 |
| **Total** | **$108.20** |

# EXHIBIT C

ESTY & BUCKMIR, LLC
2285 Whitney Avenue
Hamden, Connecticut 06518
Tel. (203) 248-5678   Fax 203-288-9974   Juris No. 415435

| DOCKET NO: FBT CV 21 6108501 S | : SUPERIOR COURT |
|---|---|
| JOSE A. GARCIA MEZA | : J.D. OF FAIRFIELD |
| VS. | : AT BRIDGEPORT |
| WHOLSEN CONSTRUCTION CO., ET AL. | : MAY 16, 2022 |

### COUNTERCLAIM RE: PRO INTERIORS, LLC

### COUNT ONE (BREACH OF CONTRACT) RE: PRO INTERIORS, LLC

1.    By *Third-Party Complaint* dated February 7, 2022 and made returnable March 15, 2022, the third-party plaintiff, Pro Interiors, LLC (hereinafter "Pro Interiors"), brought a third-party claim for one count of common law indemnity in this action against the third-party defendant, M. Brett Painting Company, Inc. (hereinafter "Brett"). Pro Interiors alleges that Brett controlled, managed and/or maintained "the situation" that led to the plaintiff's injuries herein, and that Brett was responsible for the ladder from which plaintiff fell.

2.    Pro Interiors further alleges, *inter alia*, that Brett negligently allowed plaintiff to use the subject ladder, failed to train plaintiff how to properly secure the ladder, failed to train plaintiff how to identify that the ladder did not have slip-resistant feet, and/or created the dangerous placement and condition of the ladder, thereby causing plaintiff's personal injuries and damages.

ESTY & BUCKMIR, LLC
2285 Whitney Avenue
Hamden, Connecticut 06518
Tel. (203) 248-5678    Fax 203-288-9974    Juris No. 415435

3.    At all times alleged in the *Third-Party Complaint*, Pro Interiors was a Connecticut company with a business address of 502 Huntington Street in Shelton, Connecticut.

4.    At all times alleged in the *Third-Party Complaint*, Brett was a Connecticut corporation with a business address of 458 Shore Road in Old Lyme, Connecticut 06371

5.    On or about March 6, 2019, Pro Interiors and Brett entered into a Subcontract Agreement (hereinafter "the Subcontract") (attached hereto as Exhibit "A"), whereby Pro Interiors was to act as a subcontractor to perform painting work on the premises where plaintiff alleges to have fallen.

6.    Pursuant to paragraph 1.a. of the Subcontract, Pro Interiors agreed to perform all work and furnish all supervision, labor, materials, plant, hoisting, scaffolding, tools, equipment, supplies and all other things necessary for the completion of the painting work.

7.    Pursuant to paragraph 3.a. of the Subcontract, Pro Interiors agreed to assume the entire responsibility and liability for all Work, supervision, labor and materials, and for all tools, equipment, and supplies to perform the Work.

ESTY & BUCKMIR, LLC
2285 Whitney Avenue
Hamden, Connecticut 06518
Tel. (203) 248-5678    Fax 203-288-9974    Juris No. 415435

8.      Pursuant to paragraph 3.c. of the Subcontract, Pro Interiors agreed to indemnify, defend and hold Brett harmless from and against all claims, damages, demands, losses, expenses, fines, causes of action, suits or other liabilities (including all damages) arising out of or resulting from, or alleged to arise out of or arise from, the performance of Pro Interiors' work under the Subcontract.

9.      Pursuant to the "Insurance Provisions" section of the Subcontract, Pro Interiors agreed to maintain insurance coverage during its work on the subject premises, which coverage was required to provide a defense and indemnify Brett with respect to claims of bodily injury.

10.     Pursuant to the "Insurance Provisions section of the Subcontract, Pro Interiors further agreed that in the event the insurance company issuing the policy required therein should deny coverage to Brett, Pro Interiors would defend and indemnify Brett at its own expense.

11.     If the plaintiff suffered any injuries as alleged in his *Complaint*, which is denied, and if the third-party defendant Brett is in any manner found to be legally liable to Pro Interiors as alleged in the *Third-Party Complaint*, said injuries or damages and resulting liability were proximately caused by the defendant Pro Interiors' breach of the Subcontract in failing to properly perform and/or supervise

3

ESTY & BUCKMIR, LLC
2285 Whitney Avenue
Hamden, Connecticut 06518
Tel. (203) 248-5678   Fax 203-288-9974   Juris No. 415435

the work on site and/or its failure to properly preserve and protect the plaintiff from injury.

12.     In addition, Pro Interiors has failed, refused and/or neglected to indemnify and/or defend and/or properly name the third-party defendant Brett as an additional insured on the required policies of insurance pursuant to the terms of the Subcontract, despite the demand of third-party defendant Brett.

13.     Additionally, third-party plaintiff Pro Interiors has failed, refused, and/or neglected to defend and indemnify Brett at its own expense following the denial of coverage by the insurer to Pro Interiors of defense and indemnity of Brett.

14.     Therefore, in that the third-party defendant Brett has been and will be obliged to incur costs for legal defense and investigation of the *Third-Party Complaint* and is exposed to potential legal liability to the Pro Interiors, the third-party defendant Brett is entitled to indemnification from Pro Interiors.

**COUNT TWO (ACTIVE/PASSIVE NEGLIGENCE) RE: PRO INTERIORS, LLC**

1.-7.     Paragraphs 1 through 7 of Count One are hereby incorporated and made paragraphs 1 through 7 of this, Court Two, as if fully set forth herein.

8.     If the plaintiff sustained any injuries or damages as alleged in his

ESTY & BUCKMIR, LLC
2285 Whitney Avenue
Hamden, Connecticut 06518
Tel. (203) 248-5678   Fax 203-288-9974   Juris No. 415435

*Complaint*, which is denied, and if the third-party defendant Brett is in any way found to be legally liable to Pro Interiors as alleged in the *Third-Party Complaint*, the liability of the third-party defendant Brett would arise vicariously from the active negligence and tortuous misconduct of the third-party plaintiff Pro Interiors, its agents, servants and/or employees, in failing to properly perform and/or supervise the work on site and/or its failure to properly preserve and protect the plaintiff from injury as a person affected by Pro Interiors' performance of the work, so as not to cause the subject damages to the plaintiff herein, and the third-party defendant Brett was a mere passive party.

9.     In this regard, at all times pertinent herein, the third-party plaintiff Pro Interiors exercised exclusive control over the manner, means and frequency to which it performed its duties or obligations under the Subcontract with the third-party defendant Brett.

10.     At all times pertinent herein, the third-party defendant Brett had no knowledge of any negligence or carelessness on the part of the third-party plaintiff Pro Interiors, had no reason to anticipate said negligence and carelessness, and reasonably relied upon said third-party plaintiff not to be

negligent and careless in the performance of the Subcontract and the work required thereunder.

11.    Therefore, in that the third-party defendant Brett has been and will be obliged to incur costs for legal defense and investigation of the *Third-Party Complaint* and is exposed to potential legal liability to the third-party plaintiff, the third-party defendant Brett is entitled to indemnification from the third-party plaintiff Pro Interiors.

ESTY & BUCKMIR, LLC
2285 Whitney Avenue
Hamden, Connecticut 06518
Tel. (203) 248-5678    Fax 203-288-9974    Juris No. 415435

WHEREFORE, the third-party defendant Brett claims damages against the third-party plaintiff Pro Interiors, together with costs, expenses and reasonable attorney's fees incurred in the defense of this action.

THIRD-PARTY DEFENDANT,
M. BRETT PAINTING CO., INC.

By: _____
      Jonathan A. Beatty, Esq.
      Esty & Buckmir, LLC
      2285 Whitney Avenue
      Hamden, CT 06518
      (203)248-5678
      Juris #415435

ESTY & BUCKMIR, LLC
2285 Whitney Avenue
Hamden, Connecticut 06518
Tel. (203) 248-5678    Fax 203-288-9974    Juris No. 415435

## **CERTIFICATION**

I certify that a copy of the above was or will immediately be mailed or delivered electronically or non-electronically on this date to all counsel and self-represented parties of record and that written consent for electronic delivery was received from all counsel and self-represented parties of record who were or will immediately be electronically served:

Ventura Law
235 Main Street
Danbury, CT 06810

Law Offices of Jeffrey Apuzzo
10 Waterside Drive, Suite 102
Farmington, CT 06032

Solimene & Secondo
1501 E. Main Street, Suite 204
Meriden, CT 06484

Jonathan A. Beatty, Esq.
Commissioner of the Superior Court

ESTY & BUCKMIR, LLC
2285 Whitney Avenue
Hamden, Connecticut 06518
Tel. (203) 248-5678    Fax 203-288-9974    Juris No. 415435

# EXHIBIT "A"

**SUBCONTRACT AGREEMENT**

THIS SUBCONTRACT, made this **6th** day of **March 2019** by and between **M. Brett Painting Co Inc** (hereinafter "Contractor") with an office and principal place of business at **458 Shore Road Old Lyme, CT 06371** and **Pro Interiors** (hereinafter "Subcontractor) with an office and principal place of business at **70 Budington Street Shelton CT 06484** (hereinafter collectively "Parties").

**WITNESSTH:**

**WHEREAS,** Contractor and **Wohlsen Construction** (hereinafter "General Contractor") have entered into a contract dated for the construction of **Sunrise Wilton (B-18-189)** (hereinafter "Project"), according to the contract documents listed in **Exhibit A** attached hereto (hereinafter "Contract Documents") which are made a part of this Subcontract insofar as they apply; and

**WHEREAS,** Contractor desires to subcontract certain work specified in the Contract Documents, and Subcontractor desires to perform said work at the prices and upon the terms and conditions hereinafter expressed;

**WHEREAS,** all documents comprising the Contract Documents are available for examination by Subcontractor, and Subcontractor represents that it has read and examined the Contract Documents and fully and completely understands them, or that it has had the full and complete opportunity to do so;

**NOW, THEREFORE,** in consideration of the mutual agreements herein expressed, the Parties contract, covenant and agree as follows:

1. **Subcontractors Work**

   a. Subcontractor shall perform all work and shall furnish all supervision, labor, materials, plant, hoisting, scaffolding, tools, equipment, supplies and all other things necessary for the construction and completion of the work described in **Exhibit B**, and work incidental thereto and reasonably inferable therefrom, in strict accordance and full compliance with the terms of this Subcontract, and to the satisfaction of Contractor and Owner (-hereinafter "Work").

   b. With respect to the Work covered by this Subcontract, and except as expressly modified herein, Subcontractor shall have all rights which Contractor has under the Contract Documents, and Subcontractor shall assume all obligations, risks and responsibilities which Contractor has assumed towards Owner, and third parties as applicable, in the Contract Documents, and Subcontractor shall be bound to Contractor in the same manner and to the same extent that Contractor is bound to Owner or said third parties. In case of a conflict between this Subcontract Agreement and the Contract Documents as incorporated herein, the terms of this Subcontract Agreement shall prevail. To the extent relevant to their respective scopes of work, Subcontractor shall ensure that each of its subcontractors and suppliers are bound to the terms of this Subcontract Agreement and the Contract Documents.

   c. Subcontractor shall assume sole responsibility for and shall perform, or cause to be performed, all special inspections and testing required by any applicable building code, regulations, or the Contract

Documents relative to the Subcontractor's Scope of Work. To the fullest extent permitted by law, Subcontractor shall be liable to Contractor for any and all liability, costs, expenses, fines, penalties, and attorney's fees resulting from its failure to perform such duties.

2. **Payment**

   a. Contractor shall pay Subcontractor for performance of the Work, subject to additions and deductions by written change order, the total sum of **One Hundred Thirteen Thousand Five Hundred Fifty and 00/100 Dollars ($113,550.00 )** (hereinafter "Subcontract Price").

   b. Partial payment shall be due Subcontractor in the amount of **85%** of the value of the Work in place, and for which payment has been made to Contractor by Owner. However, if Contractor does not receive payment from the Owner for Work performed by Subcontractor without the fault of Subcontractor then within a reasonable time, which is agreed to be no less than ninety (90) days after the date payment was due to Contractor by Owner, Contractor shall pay Subcontractor for Work performed in accordance with the Subcontract. If the Contract Documents allow Contractor partial payments for stored materials, partial payments shall also be due Subcontractor in the amount of **85%** of stored materials for which payment has been made to Contractor by Owner. Within fifteen (15) days of execution of the Subcontract, and prior to submission of any payment application, Subcontractor shall submit a breakdown, Contractor shall establish a reasonable breakdown which shall serve as the basis for partial payments.

   c. Partial payments shall be due seven (7) days following receipt of payment from Owner by Contractor. No partial payment made under this Subcontract shall be considered an acceptance of the Work in whole or in part. All material and Work covered by partial payments shall become the property of Contractor, or, if the Contract Documents so provide, the property of Owner immediately upon approval of payment; however, this provision shall not relieve Subcontractor from its responsibility for all Work as provided in Article 4.

   d. Subcontractor shall not apply for payment of any sums on account of Work performed by any sub-subcontractor or vendor unless it intends to immediately pay such sums to them. The Subcontractor shall pay any amounts to its sub-contractors or vendors whether for labor performed or materials furnished within thirty (30) days after the Subcontractor receives payment from Contractor which encompasses labor or material furnished by such sub-contractor or vendor. After the first partial payment hereunder, Contractor shall have the right to withhold any subsequent partial payments until Sub-contractor have been paid In addition to the requirements for payment in the Contract Documents, as requested by Contractor, Subcontractor may be required to furnish with any payment application (a) an affidavit stating that all obligations directly or indirectly related to any payment have been paid, (b) a waiver of lien rights and claim rights under any payment surety bond provided by Contractor, for all work performed on and material provided to the Project through the date of said payment application, all in a form acceptable to Contractor, and (c) certified copies of payrolls of Subcontractor and its subcontractors.

   e. Final payment, including any retainage, withheld under Paragraph 2.b., shall be made after (i) Subcontractor's Work has been accepted by Owner and Contractor, (ii) execution and delivery of a complete and final release of Contractor, Owner and Contractor's surety, in any, and a waiver of lien

rights, or a release of any filed liens, in a form acceptable to Contractor from all persons or entities furnishing labor and/or materials in the performance of the Subcontract, (iii) satisfactory proof of payment of all amounts owned by Subcontractor in connection with this Subcontract has been provided, (iv) written consent of Subcontractor's surety has been received, (v) the Subcontractor's Work is compete, (vi) Subcontractor has provided warranties required by the Contract Documents, (vii) submission of such other documents or instruments as Contractor may reasonably require or which are required by the Contract Documents, (viii) production of proof that the insurance coverage required by this Contract and Exhibit E has been procured and is in force and (ix) Contractor has been paid in full by Owner for the Subcontractor's Work. Final payment shall constitute a waiver of all claims by Subcontractor arising out of the Work or Subcontract.

f.   Subcontractor accepts sole and exclusive liability for all taxes and contributions required by Subcontractor by federal, state and local laws or regulations, including, without limitation, the Federal Social Security Act and the Unemployment Compensation Law or similar laws in any state with respect to the employees of Subcontractor and the performance of the Work.

g.   Contractor may withhold from any payment, including final payment, such amount as Contractor, in its discretion, deems reasonably necessary to protect itself against any actual or potential liability (including attorney's fees and costs) or damage directly or indirectly relating to the Subcontract arising from, or alleged to arise from, any act or omission by Subcontractor, regardless of whether or not the Owner has actually withheld payment from the Contractor.

### 3.   Subcontractor's Liability

a.   Subcontractor hereby assumes the entire responsibility and liability for all Work, supervision, labor and materials provided hereunder, whether or not erected in place, and for all plant, scaffolding, tools, equipment, su0pplies and other things provided by Subcontractor until final acceptance of the entirety of the Work by Owner. IN the event of any loss, damage or destruction thereof from any cause, Subcontractor shall be liable therefor, and shall repair, rebuild and make good said loss, damage or destruction at Subcontractor's cost, subject only to the extent that any net proceeds are payable under any builder's risk property insurance that may be maintained by Owner or Contractor, if any.

b.   Subcontractor shall be liable to Contractor for all costs Contractor incurs as a result of any failure of Subcontractor, or any of its suppliers or subcontractors of any tier, to perform.

c.   To the fullest extent permitted by law, the Subcontractor shall indemnify, defend, and hold harmless the Contractor, Owner and their respective officers, directors, employees and agents ("Indemnified Parties") from and against all claims, damages, demands, losses, expenses, fines, causes of action, suits or other liabilities, (including all damages), arising out of or resulting from, or alleged to arise out of or arise from, the performance of Subcontractor's Work under the Subcontract, whether such claim, damage, demand, loss or expense is attributable to bodily injury, personal injury, sickness, disease or death, or injury to or destruction of tangible property, including the loss of use resulting therefrom; but only to the extent attributable to the negligence of the Subcontractor or any entity for which it is legally responsible and; regardless whether the claim is presented by an employee of

Subcontractor. Such indemnity obligation shall not be in derogation or limitation of any other obligation or liability of the Subcontractor or the rights of the Contractor contained in this Subcontract or otherwise. This indemnification shall be in addition to any indemnity liability imposed by the Contract Documents, and shall survive the completion of the Work or the termination of the Subcontract.

d.   Subcontractor's assumption of liability is independent from, and not limited in any manner by, the Subcontractor's insurance coverage obtained pursuant to Article 4, or otherwise

4.   **Subcontractors Insurance**

a.   Prior to commencing the Work, Subcontractor shall procure, and therafter maintain, at its own expense, until final acceptance of the Work or later as required by the terms of the Subcontract, insurance coverage required by the Contract Documents and this Subcontract. At a minimum, the types of insurance and minimum policy limits specified in Exhibit E shall be maintained in a form and from insurers acceptable to Contractor. All insurers shall have at least an A- (excellent) rating by A.M. Best and be qualified to do business in the jurisdiction where the Project is located.

5.   **Time of Performance**

a.   Subcontractor will commence Work when directed by Contractor and Subcontractor will proceed with the Work in a prompt and diligent manner in accordance with the Project Schedule, attached hereto as Exhibit D, which may be amended from time to time by Contractor. TIME IS OF THE ESSENCE. Subcontractor shall be entitled to additional compensation for compliance with schedule amendments only to the extent, if any, that Contractor receives reimbursement from the Owner.

b.   Subcontractor shall submit a detailed schedule for performance of the Subcontract, in a form acceptable to Contractor, which shall comply with all scheduling requirements of the Contract Documents and with Paragraph 6.a. above. Contractor may, at its sole discretion, direct Subcontractor to make reasonable modifications and revisions in said schedule.

c.   Subcontractor will coordinate its Work with the work of Contractor, other subcontractors, and Owner's other builders, if any, so no delays or interference will occur in the completion of any part or all of the Project.

6.   **Changes and Claims**

a.   Contractor may, at any time, unilaterally or by agreement with Subcontractor, and without notice to the sureties, make changes in the Work. Any unilateral order, or agreement, under this Paragraph 6.a. shall be in writing, unless an emergency requires Subcontractor to proceed without a written order. Subcontractor shall immediately perform the Work as charged without delay.

b.   Subcontractor shall submit in writing to Contractor, along with substantiating evidence deemed satisfactory by Contractor, any claims for adjustment in the Subcontract Price, schedule or other provisions of the Subcontract claimed by Subcontractor for changes directed by Owner, or for

damages for which the Owner is liable, or as a result of deficiencies or discrepancies in the Contract Documents ("Owner Claims") at least five (5) business days prior to the time specified in the Contract Documents, otherwise such claims are waived. Contractor shall process said Owner Claims according to the provisions of the Contract Documents so as to protect the interests of Subcontractor and others including Contractor. Subcontract adjustments shall be made only to the extent that Contractor receives relief from or most grant relief to Owner and then only based on Subcontractor's allocable share of such relief. Subcontractor's allocable share shall be determined by Contractor, after allowance of Contractor's normal overhead, profit and other interest in any recovery, by making a reasonable apportionment, if applicable, among Subcontractor, Contractor and other subcontractors or persons with interest in the adjustment. In no event shall the Contractor become or be liable to the Subcontractor on account of any such Owner Claims in excess of the amount actually received by Contractor from Owner on account of such claim. It is expressly acknowledged that receipt of payment by Contractor from Owner on account of any such Subcontractor's Owner Claims is an express condition precedent to any obligation of Contractor to pay such claims. This paragraph will also cover other equitable adjustments or other relief allowed by the Contract Documents.

c.   For changes ordered by Contractor independent of Owner or the Contract Documents, Subcontractor shall be entitled to an equitable adjustment of the Subcontract Price or Project Schedule, or both, to the extent that impact can be substantiated to the Contractor's satisfaction.

d.   Pending resolution of any claim, dispute or other controversy, nothing shall excuse Subcontractor from proceeding with prosecution of the Work.

7.   **Failures to Perform**

a.   If, in the opinion of Contractor, Subcontractor shall at any time (1) refuse or fail to provide sufficient properly skilled workmen or materials of the proper quality, (2) fail in any respect to prosecute the Work according to the Project Schedule, (3) stop, delay, or interfere with the work of Contractor or any other builder or subcontractor, (4) fail to comply with all provisions of this Subcontract or the Contract Documents as incorporated herein, (5) be adjudged a bankrupt, or make a general assignment for the benefit of its creditors, (6) have a receiver appointed, or (7) become insolvent or a debtor in reorganization proceedings, then, after serving three (3) days written notice, unless the condition specified in such notice shall have been eliminated with such three (3) days, the Contractor may at this point (i)without voiding the other provisions of the Subcontract and without notice ot the sureties, take such steps as are necessary to overcome the condition, in which case the Subcontractor shall be liable to Contractor for the cost thereof; (ii) terminate for default the Subcontractor's right to proceed under the Subcontract, or (iii) seek specific performance of Subcontractor's obligations hereunder, it being agreed by Subcontractor that specific performance any be necessary to avoid irreparable harm to Contractor and / or Owner.

b.   In the event of termination for default, Contractor, may, at its option, (1) enter on the premises and take possession, for the purpose of completing the Work, of all materials and equipment of Subcontractor, (2) require Subcontractor to assign to Contractor any or all of its subcontracts or purchase orders involving the Project; or (3) complete the Work either by itself, or through others, by whatever method Contractor may deem expedient. In case of termination for default, Subcontractor

shall not be entitled to receive any further payment unit the Work shall be fully completed and accepted by Owner.

c.   If the Owner terminates any portion of the prime agreement with Contractor which includes the Work, then the Subcontract shall be similarly terminated and Subcontractor shall be entitled to such relief as may be granted to Contractor on Subcontractor's behalf consistent with Articles 1, 7 and 8 of the Subcontract.

d.   In the event of termination for default or any other reason, the provisions of this Subcontract concerning the subcontractor's liability, indemnity and insurance obligations shall remain in full force and effect in conformance with and for the period (s) specified in those provisions.

8.   **Settlement of Disputes**

a.   In case of any dispute between Contractor and Subcontractor, due to any Owner Claims, any act or omission of Owner or any entity for which the Owner is responsible, or involving the Contract Documents, Subcontractor agrees, to the same extent that Contractor is bound to Owner, to be bound by the terms of the Contract Documents, and by any and all preliminary and final decisions or determinations made thereunder by the party, board or court so authorized in the Contract Documents or by law, whether or not Subcontractor is a party to such proceedings. In case of such dispute, Subcontractor will comply with all provisions of the Contract Documents allowing a reasonable time for Contractor to analyze and forward to Owner any required communications or documentation. Contractor will, at its sole option (1) present to Owner, in Contractor's name, or (2) authorize Subcontractor to present to Owner, in Contractor's name, all of Subcontractor's claims and answer Owner's claims involving Subcontractor's Work, wherever Contractor is permitted to do so by the terms of the Contract Documents. If such dispute is prosecuted or defended by Contractor, Subcontractor agrees to furnish all documents, statements, witnesses, and other information required, and to pay for all costs, including attorneys' fees, incurred in connection therewith. The Subcontract Price shall be adjusted by Subcontractor's allocable share determined in accordance with Article 7 hereof.

b.   With respect to any controversy between Contractor and Subcontractor not involving the Owner, the Contract Documents or an Owner Claim, Contractor shall issue a decision which shall be final and binding unless, within five (5) days of receipt, the Subcontractor files a notification in writing of its intent to litigate the controversy in accordance with Paragraph 9.d. Notification of any such claim under this Paragraph 9.b. must be submitted in writing within then (10) days of Subcontractor's awareness of the facts underlying the claim. Failure of Subcontractor to submit timely its notice of claim or notice of intent to litigate shall constitute an absolute bar and complete waiver of Subcontractor's right to recover on account of such claim.

c.   Subject to Subcontractor's compliance with such notice requirements, either party may request non-binding mediation or non-Owner Claims with a mediator to be agreed upon by the parties, and shall pursue resolution of their dispute in good faith through such mediation. If the Parties cannot agree upon a mediator, they shall submit the dispute to the American Arbitration Association for non-

binding mediation pursuant to its rules. Any such mediation shall take place in the place where the Project is located. Any mediation costs shall be equally borne by the parties.

d. Anything to the contrary in the Contract Documents notwithstanding, any controversy between Contractor and Subcontractor not involving Owner, the Contract Documents, or an Owner Claim and which is not amicably resolved by the Parties will be submitted to either (1) a court of competent jurisdiction in the State of **Connecticut**; or , (2) Arbitration pursuant to the Construction Industry Rules of the American Arbitration Association to be conducted at the place where the Project is located. The prevailing party in any litigation/ arbitration shall be entitled to recover reasonable attorney's fees, costs and expenses incurred in connection with the litigation.

9. **Termination for Convenience**

Contractor shall have the right to terminate this Subcontract, in whole or part, for its own convenience and regardless whether there is a termination of Contractor's contract with Owner, by providing Subcontractor with a written notice of termination to be effective upon receipt by Subcontractor. If the Subcontract is terminated for convenience, the Subcontractor shall be paid the amount representing costs which are due from the Owner for its Work, as provided in the Contract Documents, after payment therefore by the Owner to Contractor. The Subcontractor's remedy under this Article 13 shall be exclusive and in no event will Subcontractor be entitled to recovery of any anticipatory profits or damages.

10. **Assignment**

a. Subcontractor shall not subcontract any portion of the work or the Subcontract and shall not assign or transfer this Subcontract, or funds due hereunder, without the prior, written consent of Contractor and Subcontractor's surety.

b. Contractor may assign the Subcontract without prejudice to its rights under the Subcontract or any surety bond issued with respect thereto.

11. **Safety**

The Contractor makes no representation with respect to the physical conditions or safety of the Project Site. The Subcontractor shall, at its own expense, preserve and protect from injury its employees engaged in the performance of the Work and all property and persons which may be affected by its operations in performing the Work. The prevention of accidents to workers engaged in the work and others affected by the Work is the responsibility of the Subcontractor and Subcontractor shall comply with all federal, state, labor and local laws, regulations and codes concerning safety as shall be applicable to the Work and to the safety standards established by Contractor during the progress of the Work. Subcontractor shall indemnify, defend, and hold harmless Contractor, Owner and their respective officers, directors, agents, and employees from any costs, expenses or liability (including attorneys' fees, fines and penalties) resulting from failure of Subcontractor to comply with the aforesaid laws, regulation and codes.

12. **Bonds**

Within ten (10) days of execution of this Subcontract, the Subcontractor shall or **shall not** furnish at Subcontractor's expense a Performance and Payment Bond each in the full amount of this Subcontract and in accordance with the forms attached as **Exhibit C**. The bond form and the surety shall be acceptable to the Contractor. Failure to deliver such bonds is a material breach of this Subcontract.

13. **Clean-up**

Subcontractor shall clean up the areas used by Subcontractor for its Work on a daily basis and remove from the Project site as directed by Contractor, and in a manner that will not impede either the progress of the Project or of other trades, all rubbish, waste material, excess material and debris resulting from the Work.

14. **Governing Law**

This Subcontract shall be governed by and constructed in accordance with the laws of the State of **Connecticut** without regard to conflict or law principles.

15. **Presumption Arising From Authorship**

Both Parties have had the opportunity to review this Subcontract with counsel and negotiate before signing this Subcontract. Therefore, there will be no presumption for or against either of the Parties arising out of the drafting of the Subcontract.

**IN WITNESS WEHREOF,** the Parties, by their duly authorized representatives, have hereunto executed this Subcontract, on the day and year first above written.

SUBCONTRACTOR: Pro Interiors

By: _____

Name: _Michael Daniels_

Title: _Owner_

Date: _10/17/2019_

CONTRACTOR:  M. Brett Painting Co Inc

BY:___Mark Brett_____

Name:  Mark Brett

Title:    President

Date:  March 6, 2019

SCOPE OF WORK

Interior Painting and WallCovering as per Plans and Specifications

INSURANCE PROVISIONS

## SUBCONTRACTOR'S INSURANCE

Before commencing the Subcontract work, and as a condition precedent to any payment, the Subcontractor shall purchase and maintain insurance in conformance with the provisions contained in this Exhibit. This insurance will provide a defense and indemnify the Contractor, but only with respect of liability for bodily injury, property damage and personal and advertising injury caused in whole or in part by the Subcontractor's acts or omissions or the acts or omissions of those acting on the Subcontractor's behalf.

Proof of this insurance shall be provided to the Contractor before the work commences, as set forth below. To the extent that the Subcontractor subcontracts with any other entity or individual to perform all or part of the Subcontractor's work, the Subcontractor shall require the other Sub-Subcontractors to furnish evidence of equivalent insurance coverage, in all respects, terms and conditions as set forth herein, prior to the commencement of work by the Sub-Subcontractor. In no event shall the failure to provide this proof, prior to the commencement of the work, be deemed a waiver by the Contractor of Subcontractor's or the Sub-Subcontractors insurance obligations set forth herein.

In the event that the insurance company (ies) issuing the policy (ies) required by this exhibit deny coverage to the Contractor, the Subcontractor or the Sub-Subcontractor will, upon demand by the Contractor, defend and indemnify the Contractor at the Subcontractor's or Sub-Contractor's expense.

## MINIMUL LIMITS OF LIABILITY

The Subcontractor must maintain the required insurance with a carrier rated A- or better by A.M. Best. The Subcontractor shall maintain at least the limits of liability as set forth below:

Commercial General Liability Insurance
$1,000,000 Each Occurrence Limit (Bodily Injury and Property Damage)
$2,000,000 General Aggregate per Project
$2,000,000.00 Products & Completed Operations Aggregate
$1,000,000 Personal and Advertising Injury Limit

Business or Commercial Automobile Liability Insurance
$1,000,000 Combined Single Limit per Accident

Workers Compensation and Employers' Liability Insurance
$100,000 Each Accident
$100,000 Each Employee for Injury by Disease
$500,000 Aggregate for Injury by Disease

Excess or Umbrella Liability (to overlay Employer's Liability, Automobile Liability and Commercial Liability Coverage's)

$1,000,000 Occurrence/ Aggregate

Additional Insured Status and Certificate of Insurance

The Contractor and Owner, along with their respective officers, agents, and employees, shall be named as additional insured's for  Ongoing Operations and Products/ Completed Operations on the Subcontractor's and any Sub-Subcontractor's Commercial General Liability Policy, which must be Primary and Non Contributory with respect to the additional insured's. This insurance shall remain in effect as set forth below, in the "Continuation of Coverage" provision.

It is expressly understood by the parties to this Contract that it is the intent of the parties that any insurance obtained by the Contractor is deemed excess, non-contributory and not co-primary in relation to the coverage(s) procured by the Subcontractor, the Sub-Subcontractor or any of their respective consultants, officers, agents, subcontractors, employees or any directly or indirectly employed by any of them, or by anyone for whose acts any of the aforementioned may be liable by operation of statue, government regulation or applicable case law.

To the fullest extent permitted by applicable state law, a Waiver of Subrogation Clause shall be added to the General Liability, Automobile and Workers Compensation policies in favor of Contractor and Owner, and this clause shall apply to the Contractor's and Owner's officers, agents and employees, with respect to all projects during the policy term.

Prior to commencement of work, Subcontractor shall submit a Certificate of Insurance in favor of Contractor and an Additional Insured Endorsement (in a form acceptable to the Contractor) as required hereunder. The certificate shall provide for thirty (30) days notice to Contractor for cancellation or any change in coverage. Copies of insurance policies shall promptly be made available to the Contractor upon request.

CANCELATION, RENEWAL AND MODIFICATION

The Subcontractor shall maintain in effect all insurance coverage's required under this Agreement at the Subcontractor's sole expense and with insurance companies acceptable to the Contractor until final completion and acceptance of the entirety of the Subcontract Work; or longer if so provided in the Agreement such as with respect to completed operations coverage. Certificates of insurance showing required coverage to be in force must be delivered to the Contractor prior to commencement of the Subcontract Work. In the event the Subcontractor fails to obtain or maintain any insurance coverage required under this Agreement, this shall be considered a material breach of the contract, entitling the Contractor, at its sole discretion, to purchase such equivalent coverage as desired for the Contractor's benefit and charge the expense to the Subcontractor, or, in the alternative, exercise all remedies otherwise provided in the contract, or as permitted by law or equity.

CONTINUATION OF COVERAGE

The Subcontractor shall continue to carry Completed Operations Liability Insurance for a least three (3) years after either ninety (90) days following Substantial Completion of the Work or final payment to the Contractor, whichever is later. The Subcontractor shall furnish the Contractor evidence of such insurance at final payment and in each successive year during which the insurance coverage must remain in effect.

ACKNOWLEGEMENT OF REFERRAL OF THIS PROVISION TO THE SUBCONTRACTOR'S INSRUANCE AGENT OR BROKER

The Subcontractor represents that it has provided a copy of the "Insurance Provisions" to his insurance agent and/ or broker, and that the Subcontractor has instructed the agent/ broker to provide insurance in full compliance with the terms and conditions herein.

The Contractor and Subcontractor hereby acknowledge that this Exhibit is considered a material term of the Subcontract.

_____ 10/12/2019
On Behalf of the Subcontractor

_____Mark Brett_____
On Behalf of the Contractor

# EXHIBIT D

| FBT-CV21-6108501-S | : | SUPERIOR COURT |
| | : | |
| JOSE AURIELLO MEZA GARCIA | : | J.D. OF FAIRFIELD |
| | : | |
| v | : | AT BRIDGEPORT |
| | : | |
| WOHLSEN CONSTRUCTION COMPANY ET. AL. | : | OCTOBER 4, 2021 |

## CROSS-CLAIM AGAINST PRO INTERIORS, LLC

**COUNT ONE       BREACH OF CONTRACT**

1. By writ and summons dated July 7, 2021 and made returnable on August 17, 2021, the plaintiff, Jose Auriello Meza Garcia brought a two count Complaint against Wohlsen Construction Company ("Wohlsen"), and Pro Interiors, LLC ("Pro Interiors") claiming personal injuries and damages resulting from a fall from a ladder on August 6, 2019.

2. At all times mentioned herein, Pro Interiors was a Connecticut Company with a business address of 502 Huntington Street in Shelton, Connecticut.

3. At all times herein Wohlsen was a domestic corporation with a business address of 2321 Whitney Avenues, Suite 101, Hamden, Connecticut.

4. At all times herein M. Brett Painting Company, Inc. ("M. Brett") was a Connecticut corporation with a business address of 458 Shore Road in Old Lyme, Connecticut.

5. In the First Count of the Plaintiff's Complaint, the plaintiff claims that Wohlsen Construction Company owned, possessed, controlled, managed, and/or maintained the premises at 211 Danbury Road in Wilton Connecticut on August 6, 2019.

1

6. In the First Count of the Plaintiff's Complaint, the plaintiff claims Wohlsen was

   negligent in one or more of the following ways, in that it:

   a. Failed to provide training to the plaintiff on how to properly secure a ladder to prevent it from slipping and becoming displaced;
   b. Failed to provide training to the plaintiff on how to identity a ladder that did not have slip resistant feet;
   c. Failed to warn the plaintiff that the ladder was not properly secured and that it did not have slip resistant feet and that was in danger of becoming displaced and slipping;
   d. Allowed the plaintiff to use a ladder that was not properly secured and that did not have slip resistant feet when it knew or should have known that it was dangerous to do so;
   e. Failed to inspect the worksite to discover dangerous conditions such as the improperly secured ladder without slip resistant feet that the plaintiff was using when he fell;
   f. Knew or should have known of the dangerous condition of the improperly secured ladder without the slip resistant feet but failed to take steps to remedy it;
   g.  Created the dangerous placement and condition of the ladder on the floor and it allowed it to exist for an unreasonable amount of time;
   h. Failed to comply with generally accepted construction industry standards in violation of Occupational Safety and Health Administration section 1926 1053(b)(7).

7. In the Second Count of the Plaintiff's Complaint, the plaintiff claims that Pro

   Interiors owned, possessed, controlled, managed, and/or maintained the

   premises at 211 Danbury Road in Wilton Connecticut on August 6, 2019.

8. In the Second Count of the Plaintiff's Complaint, the plaintiff claims Pro Interiors

   was negligent in one or more of the following ways, in that it:

   a. Failed to provide training to the plaintiff on how to properly secure a ladder to prevent it from slipping and becoming displaced;
   b. Failed to provide training to the plaintiff on how to identity a ladder that did not have slip resistant feet;
   c. Failed to warn the plaintiff that the ladder was not properly secured and that it did not have slip resistant feet and that was in danger of becoming displaced and slipping;
   d. Allowed the plaintiff to use a ladder that was not properly secured and that

2

      did not have slip resistant feet when it knew or should have known that it
      was dangerous to do so;

  e. Failed to inspect the worksite to discover dangerous conditions such as
      the improperly secured ladder without slip resistant feet that the plaintiff
      was using when he fell;

  f. Knew or should have known of the dangerous condition of the improperly
      secured ladder without the slip resistant feet but failed to take steps to
      remedy it;

  g. Created the dangerous placement and condition of the ladder on the floor
      and it allowed it to exist for an unreasonable amount of time;

  h. Failed to comply with generally accepted construction industry standards
      in violation of Occupational Safety and Health Administration section 1926
      1053(b)(7).

9. At all times relevant herein, Pro Interiors and M. Brett entered into a Subcontract
Agreement ("the Subcontract") (attached hereto as Exhibit A), whereby Pro
Interiors was to act as a subcontractor to perform painting work on the premises
where the plaintiff alleges to have fallen.

10. The Subcontract incorporates the agreement between the Contractor M. Brett
and the General Contractor, Wohlsen.

11. Wohlsen is a third-party beneficiary of the Subcontract between Pro Interiors and
M. Brett.

12. Pursuant to paragraph 1.a. of the Subcontract, Pro Interiors agreed to perform
all work and furnish all supervision, labor, materials, plant, hoisting, scaffolding,
tools, equipment, supplies and all other things necessary for the completion of
the painting work.

13. Pursuant to paragraph 3.a of the Subcontract, Pro Interiors agreed to assume
the entire responsibility and liability for all Work, supervision, labor, and materials
and for all tools, equipment, and supplies to perform the Work.

14. Pursuant to paragraph 3.c. of the Subcontract, Pro Interiors agreed to indemnify,

defend, and hold harmless Wohlsen from and against all claims, damages, demands, losses, expenses, fines, causes of action, suits or other liabilities (including all damages) arising out of or resulting from, or alleged to arise out of or arise from, the performance of Pro Interior's work under the Subcontract.

15. Pursuant to the "Insurance Provisions" section of the Subcontract, Pro Interiors agreed to maintain insurance coverage during its work on the subject premises, which coverage was required to provide a defense and indemnify Wohlsen with respect to claims of bodily injury.

16. Pursuant to the "Insurance Provisions" section of the Subcontract, Pro Interiors further agreed that in the event the insurance company issuing the policy required therein should deny coverage to Wohlsen, Pro Interiors would defend and indemnify Wohlsen at its own expense.

17. If the plaintiff suffered any of the injuries he alleges in his Complaint, which is denied, and if the defendant Wohlsen is in any manner found to be legally liable to the Plaintiff as alleged in the Complaint, said injuries or damages and resulting liability were proximately caused by the defendant Pro Interiors' breach of the Subcontract in failing to properly perform and/or supervise the work on site and/or failure to properly protect the plaintiff from injury.

18. In addition Pro Contractors has failed, refused and/or neglected to indemnify and/or defend and/or properly name the defendant, Wohlsen, as an additional insured on the required policies of insurance pursuant to the terms of the Subcontract, despite demand of Wohlsen.

4

19. In addition, Pro Contractors failed to acquire the required excess umbrella coverage agreed upon in the Subcontact.

20. Additionally, Pro Interiors has failed, refused and/or neglected to defend and indemnify Wohlsen at its own expense following the denial of coverage by its insurer.

21. Therefore, Wohlsent has been and will be obligated to incur costs for legal defense and investigation of the Complaint and is expose to potential legal liability, the defendant Wohlsen is entitled to indemnification from Pro Interiors.

**COUNT TWO:**        **COMMON LAW INDEMNIFICATION**

1. - 10. Paragraphs 1. – 10. of Count One above are hereby incorporated and made paragraphs 1. – 10. of this Count Two as if fully setforth herein.

11. If the plaintiff sustained any injuries or damages alleged in his complaint, which is denied, said injuries and damages were caused by the active negligence of Pro Interiors.

12. Pro Interiors was in exclusive control over the manner, means and frequency to which it performed its duties or obligations under the terms of the Subcontract to the exclusion of Wohlsen.

13. At all relevant times herein, Wohlsen had no knowledge of any negligence or carelessness on part of Pro Interiors, had no reason to anticipate such negligence and carelessness and reasonably relied on Pro Interiors not to be negligent and careless in the performance of the Subcontract and the work required therein.

5

14. Wohlsen has been and will continue to be obligated to incur costs for legal defense and investigation of the plaintiff's Complaint and is exposed to potential legal liability to the plaintiff and is entitled to indemnification from Pro Interiors.

WHEREFORE, the defendant, Wohlsen Constricton Company claims damages against

Pro Interiors, together with costs, expenses and reasonable attorney's fees incurred I

the defense of this action.

THE DEFENDANT,

**WOHLSEN CONSTRUCTION COMPANY**

BY:      /s/   430507
         Gina M. Galullo, Esq.
         Law Office of Jeffery P. Apuzzo
         10 Waterside Drive, Suite 102
         Farmington, CT 06032
         Juris No. 430507
         Tel. 860-507-2070
         Fax 855-515-8239

7

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the above was mailed or electronically delivered on

this 4th  day of October, 2022 to all counsel and pro se parties of record and that written

consent for electronic delivery was received from all counsel and pro se parties of

record who were electronically served including:

Peter Baez, Esq.
Ventura Law
2160 Main Street, Suite 2B
Bridgeport, CT 06606
peter@venturalaw.com
cheryl@venturalaw.com

Cynthia Coccomo, Esq.
Solimene & Secondo, LLP
1501 East Main Street, Suite 204
Meriden, CT 06450
coccomo@ss-llp.com

Jonathan A. Beatty, Esq.
Esty & Buckmir, LLC
2285 Whitney Avenue, Suite 10
Hamden, CT 06518
jbeatty@estyandbuckmir.com


                                      /s/  430507
                                        Gina M. Galullo, Esq.
                                        Commissioner of the Superior Court

# EXHIBIT A

## SUBCONTRACT AGREEMENT

THIS SUBCONTRACT, made this **6th** day of **March 2019** by and between **M. Brett Painting Co Inc** (hereinafter "Contractor") with an office and principal place of business at **458 Shore Road Old Lyme, CT 06371** and **Pro Interiors** (hereinafter "Subcontractor) with an office and principal place of business at **70 Budington Street Shelton CT 06484** (hereinafter collectively "Parties").

### WITNESSTH:

**WHEREAS,** Contractor and **Wohlsen Construction** (hereinafter "General Contractor") have entered into a contract dated for the construction of **Sunrise Wilton (B-18-189)** (hereinafter "Project"), according to the contract documents listed in **Exhibit A** attached hereto (hereinafter "Contract Documents") which are made a part of this Subcontract insofar as they apply; and

**WHEREAS,** Contractor desires to subcontract certain work specified in the Contract Documents, and Subcontractor desires to perform said work at the prices and upon the terms and conditions hereinafter expressed;

**WHEREAS,** all documents comprising the Contract Documents are available for examination by Subcontractor, and Subcontractor represents that it has read and examined the Contract Documents and fully and completely understands them, or that it has had the full and complete opportunity to do so;

**NOW, THEREFORE,** in consideration of the mutual agreements herein expressed, the Parties contract, covenant and agree as follows:

1. <u>Subcontractors Work</u>

   a. Subcontractor shall perform all work and shall furnish all supervision, labor, materials, plant, hoisting, scaffolding, tools, equipment, supplies and all other things necessary for the construction and completion of the work described in **Exhibit B**, and work incidental thereto and reasonably inferable therefrom, in strict accordance and full compliance with the terms of this Subcontract, and to the satisfaction of Contractor and Owner (-hereinafter "Work").

   b. With respect to the Work covered by this Subcontract, and except as expressly modified herein, Subcontractor shall have all rights which Contractor has under the Contract Documents, and Subcontractor shall assume all obligations, risks and responsibilities which Contractor has assumed towards Owner, and third parties as applicable, in the Contract Documents, and Subcontractor shall be bound to Contractor in the same manner and to the same extent that Contractor is bound to Owner or said third parties. In case of a conflict between this Subcontract Agreement and the Contract Documents as incorporated herein, the terms of this Subcontract Agreement shall prevail. To the extent relevant to their respective scopes of work, Subcontractor shall ensure that each of its subcontractors and suppliers are bound to the terms of this Subcontract Agreement and the Contract Documents.

   c. Subcontractor shall assume sole responsibility for and shall perform, or cause to be performed, all special inspections and testing required by any applicable building code, regulations, or the Contract

Documents relative to the Subcontractor's Scope of Work. To the fullest extent permitted by law, Subcontractor shall be liable to Contractor for any and all liability, costs, expenses, fines, penalties, and attorney's fees resulting from its failure to perform such duties.

**2.** **Payment**

    a.   Contractor shall pay Subcontractor for performance of the Work, subject to additions and deductions by written change order, the total sum of **One Hundred Thirteen Thousand Five Hundred Fifty and 00/100 Dollars ($113,550.00 )** (hereinafter "Subcontract Price").

    b.   Partial payment shall be due Subcontractor in the amount of 85% of the value of the Work in place, and for which payment has been made to Contractor by Owner. However, if Contractor does not receive payment from the Owner for Work performed by Subcontractor without the fault of Subcontractor then within a reasonable time, which is agreed to be no less than ninety (90) days after the date payment was due to Contractor by Owner, Contractor shall pay Subcontractor for Work performed in accordance with the Subcontract. If the Contract Documents allow Contractor partial payments for stored materials, partial payments shall also be due Subcontractor in the amount of 85% of stored materials for which payment has been made to Contractor by Owner. Within fifteen (15) days of execution of the Subcontract, and prior to submission of any payment application, Subcontractor shall submit a breakdown, Contractor shall establish a reasonable breakdown which shall serve as the basis for partial payments.

    c.   Partial payments shall be due seven (7) days following receipt of payment from Owner by Contractor. No partial payment made under this Subcontract shall be considered an acceptance of the Work in whole or in part. All material and Work covered by partial payments shall become the property of Contractor, or, if the Contract Documents so provide, the property of Owner immediately upon approval of payment; however, this provision shall not relieve Subcontractor from its responsibility for all Work as provided in Article 4.

    d.   Subcontractor shall not apply for payment of any sums on account of Work performed by any sub-subcontractor or vendor unless it intends to immediately pay such sums to them. The Subcontractor shall pay any amounts to its sub-contractors or vendors whether for labor performed or materials furnished within thirty (30) days after the Subcontractor receives payment from Contractor which encompasses labor or material furnished by such sub-contractor or vendor. After the first partial payment hereunder, Contractor shall have the right to withhold any subsequent partial payments until Sub-contractor have been paid In addition to the requirements for payment in the Contract Documents, as requested by Contractor, Subcontractor may be required to furnish with any payment application (a) an affidavit stating that all obligations directly or indirectly related to any payment have been paid, (b) a waiver of lien rights and claim rights under any payment surety bond provided by Contractor, for all work performed on and material provided to the Project through the date of said payment application, all in a form acceptable to Contractor, and (c) certified copies of payrolls of Subcontractor and its subcontractors.

    e.   Final payment, including any retainage, withheld under Paragraph 2.b., shall be made after (i) Subcontractor's Work has been accepted by Owner and Contractor, (ii) execution and delivery of a complete and final release of Contractor, Owner and Contractor's surety, in any, and a waiver of lien

rights, or a release of any filed liens, in a form acceptable to Contractor from all persons or entities furnishing labor and/or materials in the performance of the Subcontract, (iii) satisfactory proof of payment of all amounts owned by Subcontractor in connection with this Subcontract has been provided, (iv) written consent of Subcontractor's surety has been received, (v) the Subcontractor's Work is compete, (vi) Subcontractor has provided warranties required by the Contract Documents, (vii) submission of such other documents or instruments as Contractor may reasonably require or which are required by the Contract Documents, (viii) production of proof that the insurance coverage required by this Contract and Exhibit E has been procured and is in force and (ix) Contractor has been paid in full by Owner for the Subcontractor's Work. Final payment shall constitute a waiver of all claims by Subcontractor arising out of the Work or Subcontract.

f. Subcontractor accepts sole and exclusive liability for all taxes and contributions required by Subcontractor by federal, state and local laws or regulations, including, without limitation, the Federal Social Security Act and the Unemployment Compensation Law or similar laws in any state with respect to the employees of Subcontractor and the performance of the Work.

g. Contractor may withhold from any payment, including final payment, such amount as Contractor, in its discretion, deems reasonably necessary to protect itself against any actual or potential liability (including attorney's fees and costs) or damage directly or indirectly relating to the Subcontract arising from, or alleged to arise from, any act or omission by Subcontractor, regardless of whether or not the Owner has actually withheld payment from the Contractor.

3. **Subcontractor's Liability**

a. Subcontractor hereby assumes the entire responsibility and liability for all Work, supervision, labor and materials provided hereunder, whether or not erected in place, and for all plant, scaffolding, tools, equipment, suOpplies and other things provided by Subcontractor until final acceptance of the entirety of the Work by Owner. IN the event of any loss, damage or destruction thereof from any cause, Subcontractor shall be liable therefor, and shall repair, rebuild and make good said loss, damage or destruction at Subcontractor's cost, subject only to the extent that any net proceeds are payable under any builder's risk property insurance that may be maintained by Owner or Contractor, if any.

b. Subcontractor shall be liable to Contractor for all costs Contractor incurs as a result of any failure of Subcontractor, or any of its suppliers or subcontractors of any tier, to perform.

c. To the fullest extent permitted by law, the Subcontractor shall indemnify, defend, and hold harmless the Contractor, Owner and their respective officers, directors, employees and agents ("Indemnified Parties") from and against all claims, damages, demands, losses, expenses, fines, causes of action, suits or other liabilities, (including all damages), arising out of or resulting from, or alleged to arise out of or arise from, the performance of Subcontractor's Work under the Subcontract, whether such claim, damage, demand, loss or expense is attributable to bodily injury, personal injury, sickness, disease or death, or injury to or destruction of tangible property, including the loss of use resulting therefrom; but only to the extent attributable to the negligence of the Subcontractor or any entity for which it is legally responsible and; regardless whether the claim is presented by an employee of

Subcontractor. Such indemnity obligation shall not be in derogation or limitation of any other obligation or liability of the Subcontractor or the rights of the Contractor contained in this Subcontract or otherwise. This Indemnification shall be in addition to any indemnity liability imposed by the Contract Documents, and shall survive the completion of the Work or the termination of the Subcontract.

d.   Subcontractor's assumption of liability is independent from, and not limited in any manner by, the Subcontractor's insurance coverage obtained pursuant to Article 4, or otherwise

### 4.  Subcontractors Insurance

a.   Prior to commencing the Work, Subcontractor shall procure, and therafter maintain, at its own expense, until final acceptance of the Work or later as required by the terms of the Subcontract, insurance coverage required by the Contract Documents and this Subcontract. At a minimum, the types of insurance and minimum policy limits specified in Exhibit E shall be maintained in a form and from insurers acceptable to Contractor. All insurers shall have at least an A- (excellent) rating by A.M. Best and be qualified to do business in the jurisdiction where the Project is located.

### 5.  Time of Performance

a.   Subcontractor will commence Work when directed by Contractor and Subcontractor will proceed with the Work in a prompt and diligent manner in accordance with the Project Schedule, attached hereto as Exhibit D, which may be amended from time to time by Contractor. TIME IS OF THE ESSENCE. Subcontractor shall be entitled to additional compensation for compliance with schedule amendments only to the extent, if any, that Contractor receives reimbursement from the Owner.

b.   Subcontractor shall submit a detailed schedule for performance of the Subcontract, in a form acceptable to Contractor, which shall comply with all scheduling requirements of the Contract Documents and with Paragraph 6.a. above. Contractor may, at its sole discretion, direct Subcontractor to make reasonable modifications and revisions in said schedule.

c.   Subcontractor will coordinate its Work with the work of Contractor, other subcontractors, and Owner's other builders, if any, so no delays or interference will occur in the completion of any part or all of the Project.

### 6.  Changes and Claims

a.   Contractor may, at any time, unilaterally or by agreement with Subcontractor, and without notice to the sureties, make changes in the Work. Any unilateral order, or agreement, under this Paragraph 6.a. shall be in writing, unless an emergency requires Subcontractor to proceed without a written order. Subcontractor shall immediately perform the Work as charged without delay.

b.   Subcontractor shall submit in writing to Contractor, along with substantiating evidence deemed satisfactory by Contractor, any claims for adjustment in the Subcontract Price, schedule or other provisions of the Subcontract claimed by Subcontractor for changes directed by Owner, or for

damages for which the Owner is liable, or as a result of deficiencies or discrepancies in the Contract Documents ("Owner Claims") at least five (5) business days prior to the time specified in the Contract Documents, otherwise such claims are waived. Contractor shall process said Owner Claims according to the provisions of the Contract Documents so as to protect the interests of Subcontractor and others including Contractor. Subcontract adjustments shall be made only to the extent that Contractor receives relief from or most grant relief to Owner and then only based on Subcontractor's allocable share of such relief. Subcontractor's allocable share shall be determined by Contractor, after allowance of Contractor's normal overhead, profit and other interest in any recovery, by making a reasonable apportionment, if applicable, among Subcontractor, Contractor and other subcontractors or persons with interest in the adjustment. In no event shall the Contractor become or be liable to the Subcontractor on account of any such Owner Claims in excess of the amount actually received by Contractor from Owner on account of such claim. It is expressly acknowledged that receipt of payment by Contractor from Owner on account of any such Subcontractor's Owner Claims is an express condition precedent to any obligation of Contractor to pay such claims. This paragraph will also cover other equitable adjustments or other relief allowed by the Contract Documents.

c. For changes ordered by Contractor independent of Owner or the Contract Documents, Subcontractor shall be entitled to an equitable adjustment of the Subcontract Price or Project Schedule, or both, to the extent that impact can be substantiated to the Contractor's satisfaction.

d. Pending resolution of any claim, dispute or other controversy, nothing shall excuse Subcontractor from proceeding with prosecution of the Work.

7. **Failures to Perform**

a. If, in the opinion of Contractor, Subcontractor shall at any time (1) refuse or fail to provide sufficient properly skilled workmen or materials of the proper quality, (2) fail in any respect to prosecute the Work according to the Project Schedule, (3) stop, delay, or interfere with the work of Contractor or any other builder or subcontractor, (4) fail to comply with all provisions of this Subcontract or the Contract Documents as incorporated herein, (5) be adjudged a bankrupt, or make a general assignment for the benefit of its creditors, (6) have a receiver appointed, or (7) become insolvent or a debtor in reorganization proceedings, then, after serving three (3) days written notice, unless the condition specified in such notice shall have been eliminated with such three (3) days, the Contractor may at this point (i)without voiding the other provisions of the Subcontract and without notice ot the sureties, take such steps as are necessary to overcome the condition, in which case the Subcontractor shall be liable to Contractor for the cost thereof; (ii) terminate for default the Subcontractor's right to proceed under the Subcontract, or (iii) seek specific performance of Subcontractor's obligations hereunder, it being agreed by Subcontractor that specific performance any be necessary to avoid irreparable harm to Contractor and / or Owner.

b. In the event of termination for default, Contractor, may, at its option, (1) enter on the premises and take possession, for the purpose of completing the Work, of all materials and equipment of Subcontractor, (2) require Subcontractor to assign to Contractor any or all of its subcontracts or purchase orders involving the Project; or (3) complete the Work either by itself, or through others, by whatever method Contractor may deem expedient. In case of termination for default, Subcontractor

shall not be entitled to receive any further payment unit the Work shall be fully completed and accepted by Owner.

c.   If the Owner terminates any portion of the prime agreement with Contractor which includes the Work, then the Subcontract shall be similarly terminated and Subcontractor shall be entitled to such relief as may be granted to Contractor on Subcontractor's behalf consistent with Articles 1, 7 and 8 of the Subcontract.

d.   In the event of termination for default or any other reason, the provisions of this Subcontract concerning the subcontractor's liability, indemnity and insurance obligations shall remain in full force and effect in conformance with and for the period (s) specified in those provisions.

8.   **Settlement of Disputes**

a.   In case of any dispute between Contractor and Subcontractor, due to any Owner Claims, any act or omission of Owner or any entity for which the Owner is responsible, or involving the Contract Documents, Subcontractor agrees, to the same extent that Contractor is bound to Owner, to be bound by the terms of the Contract Documents, and by any and all preliminary and final decisions or determinations made thereunder by the party, board or court so authorized in the Contract Documents or by law, whether or not Subcontractor is a party to such proceedings. In case of such dispute, Subcontractor will comply with all provisions of the Contract Documents allowing a reasonable time for Contractor to analyze and forward to Owner any required communications or documentation. Contractor will, at its sole option (1) present to Owner, in Contractor's name, or (2) authorize Subcontractor to present to Owner, in Contractor's name, all of Subcontractor's claims and answer Owner's claims involving Subcontractor's Work, wherever Contractor is permitted to do so by the terms of the Contract Documents. If such dispute is prosecuted or defended by Contractor, Subcontractor agrees to furnish all documents, statements, witnesses, and other information required, and to pay for all costs, including attorneys' fees, incurred in connection therewith. The Subcontract Price shall be adjusted by Subcontractor's allocable share determined in accordance with Article 7 hereof.

b.   With respect to any controversy between Contractor and Subcontractor not involving the Owner, the Contract Documents or an Owner Claim, Contractor shall issue a decision which shall be final and binding unless, within five (5) days of receipt, the Subcontractor files a notification in writing of its intent to litigate the controversy in accordance with Paragraph 9.d. Notification of any such claim under this Paragraph 9.b. must be submitted in writing within then (10) days of Subcontractor's awareness of the facts underlying the claim. Failure of Subcontractor to submit timely its notice of claim or notice of intent to litigate shall constitute an absolute bar and complete waiver of Subcontractor's right to recover on account of such claim.

c.   Subject to Subcontractor's compliance with such notice requirements, either party may request non-binding mediation or non-Owner Claims with a mediator to be agreed upon by the parties, and shall pursue resolution of their dispute in good faith through such mediation. If the Parties cannot agree upon a mediator, they shall submit the dispute to the American Arbitration Association for non-

binding mediation pursuant to its rules. Any such mediation shall take place in the place where the Project is located. Any mediation costs shall be equally borne by the parties.

d. Anything to the contrary in the Contract Documents notwithstanding, any controversy between Contractor and Subcontractor not involving Owner, the Contract Documents, or an Owner Claim and which is not amicably resolved by the Parties will be submitted to either (1) a court of competent jurisdiction in the State of **Connecticut**; or , (2) Arbitration pursuant to the Construction Industry Rules of the American Arbitration Association to be conducted at the place where the Project is located. The prevailing party in any litigation/ arbitration shall be entitled to recover reasonable attorney's fees, costs and expenses incurred in connection with the litigation.

9. <u>Termination for Convenience</u>

Contractor shall have the right to terminate this Subcontract, in whole or part, for its own convenience and regardless whether there is a termination of Contractor's contract with Owner, by providing Subcontractor with a written notice of termination to be effective upon receipt by Subcontractor. If the Subcontract is terminated for convenience, the Subcontractor shall be paid the amount representing costs which are due from the Owner for its Work, as provided in the Contract Documents, after payment therefore by the Owner to Contractor. The Subcontractor's remedy under this Article 13 shall be exclusive and in no event will Subcontractor be entitled to recovery of any anticipatory profits or damages.

10. <u>Assignment</u>

a. Subcontractor shall not subcontract any portion of the work or the Subcontract and shall not assign or transfer this Subcontract, or funds due hereunder, without the prior, written consent of Contractor and Subcontractor's surety.

b. Contractor may assign the Subcontract without prejudice to its rights under the Subcontract or any surety bond issued with respect thereto.

11. <u>Safety</u>

The Contractor makes no representation with respect to the physical conditions or safety of the Project Site. The Subcontractor shall, at its own expense, preserve and protect from injury its employees engaged in the performance of the Work and all property and persons which may be affected by its operations in performing the Work. The prevention of accidents to workers engaged in the work and others affected by the Work is the responsibility of the Subcontractor and Subcontractor shall comply with all federal, state, labor and local laws, regulations and codes concerning safety as shall be applicable to the Work and to the safety standards established by Contractor during the progress of the Work. Subcontractor shall indemnify, defend, and hold harmless Contractor, Owner and their respective officers, directors, agents, and employees from any costs, expenses or liability (including attorneys' fees, fines and penalties) resulting from failure of Subcontractor to comply with the aforesaid laws, regulation and codes.

12. **Bonds**

Within ten (10) days of execution of this Subcontract, the Subcontractor shall or **shall not** furnish at Subcontractor's expense a Performance and Payment Bond each in the full amount of this Subcontract and in accordance with the forms attached as **Exhibit C**. The bond form and the surety shall be acceptable to the Contractor. Failure to deliver such bonds is a material breach of this Subcontract.

13. **Clean-up**

Subcontractor shall clean up the areas used by Subcontractor for its Work on a daily basis and remove from the Project site as directed by Contractor, and in a manner that will not impede either the progress of the Project or of other trades, all rubbish, waste material, excess material and debris resulting from the Work.

14. **Governing Law**

This Subcontract shall be governed by and constructed in accordance with the laws of the State of **Connecticut** without regard to conflict or law principles.

15. **Presumption Arising From Authorship**

Both Parties have had the opportunity to review this Subcontract with counsel and negotiate before signing this Subcontract. Therefore, there will be no presumption for or against either of the Parties arising out of the drafting of the Subcontract.

**IN WITNESS WEHREOF**, the Parties, by their duly authorized representatives, have hereunto executed this Subcontract, on the day and year first above written.

SUBCONTRACTOR: Pro Interiors

By: _____

Name: *Michael Daniels*

Title: *Owner*

Date: *10/17/2019*

CONTRACTOR:  M. Brett Painting Co Inc

BY:____*Mark Brett*_____

Name:  Mark Brett

Title:    President

Date:  **March 6, 2019**

**SCOPE OF WORK**

Interior Painting and WallCovering as per Plans and Specifications

INSURANCE PROVISIONS

**SUBCONTRACTOR'S INSURANCE**

Before commencing the Subcontract work, and as a condition precedent to any payment, the Subcontractor shall purchase and maintain insurance in conformance with the provisions contained in this Exhibit. This insurance will provide a defense and indemnify the Contractor, but only with respect of liability for bodily injury, property damage and personal and advertising injury caused in whole or in part by the Subcontractor's acts or omissions or the acts or omissions of those acting on the Subcontractor's behalf.

Proof of this insurance shall be provided to the Contractor before the work commences, as set forth below. To the extent that the Subcontractor subcontracts with any other entity or individual to perform all or part of the Subcontractor's work, the Subcontractor shall require the other Sub-Subcontractors to furnish evidence of equivalent insurance coverage, in all respects, terms and conditions as set forth herein, prior to the commencement of work by the Sub-Subcontractor. In no event shall the failure to provide this proof, prior to the commencement of the work, be deemed a waiver by the Contractor of Subcontractor's or the Sub-Subcontractors insurance obligations set forth herein.

In the event that the insurance company (ies) issuing the policy (ies) required by this exhibit deny coverage to the Contractor, the Subcontractor or the Sub-Subcontractor will, upon demand by the Contractor, defend and indemnify the Contractor at the Subcontractor's or Sub-Contractor's expense.

**MINIMUL LIMITS OF LIABILITY**

The Subcontractor must maintain the required insurance with a carrier rated A- or better by A.M. Best. The Subcontractor shall maintain at least the limits of liability as set forth below:

Commercial General Liability Insurance
$1,000,000 Each Occurrence Limit (Bodily Injury and Property Damage)
$2,000,000 General Aggregate per Project
$2,000,000.00 Products & Completed Operations Aggregate
$1,000,000 Personal and Advertising Injury Limit

Business or Commercial Automobile Liability Insurance
$1,000,000 Combined Single Limit per Accident

Workers Compensation and Employers' Liability Insurance
$100,000 Each Accident
$100,000 Each Employee for Injury by Disease
$500,000 Aggregate for Injury by Disease

Excess or Umbrella Liability (to overlay Employer's Liability, Automobile Liability and Commercial Liability Coverage's)

$1,000,000 Occurrence/ Aggregate

Additional Insured Status and Certificate of Insurance

The Contractor and Owner, along with their respective officers, agents, and employees, shall be named as additional insured's for  Ongoing Operations and Products/ Completed Operations on the Subcontractor's and any Sub-Subcontractor's Commercial General Liability Policy, which must be Primary and Non Contributory with respect to the additional insured's. This insurance shall remain in effect as set forth below, in the "Continuation of Coverage" provision.

It is expressly understood by the parties to this Contract that it is the intent of the parties that any insurance obtained by the Contractor is deemed excess, non-contributory and not co-primary in relation to the coverage(s) procured by the Subcontractor, the Sub-Subcontractor or any of their respective consultants, officers, agents, subcontractors, employees or any directly or indirectly employed by any of them, or by anyone for whose acts any of the aforementioned may be liable by operation of statue, government regulation or applicable case law.

To the fullest extent permitted by applicable state law, a Waiver of Subrogation Clause shall be added to the General Liability, Automobile and Workers Compensation policies in favor of Contractor and Owner, and this clause shall apply to the Contractor's and Owner's officers, agents and employees, with respect to all projects during the policy term.

Prior to commencement of work, Subcontractor shall submit a Certificate of Insurance in favor of Contractor and an Additional Insured Endorsement (in a form acceptable to the Contractor) as required hereunder. The certificate shall provide for thirty (30) days notice to Contractor for cancellation or any change in coverage. Copies of insurance policies shall promptly be made available to the Contractor upon request.

## CANCELATION, RENEWAL AND MODIFICATION

The Subcontractor shall maintain in effect all insurance coverage's required under this Agreement at the Subcontractor's sole expense and with insurance companies acceptable to the Contractor until final completion and acceptance of the entirety of the Subcontract Work; or longer if so provided in the Agreement such as with respect to completed operations coverage. Certificates of insurance showing required coverage to be in force must be delivered to the Contractor prior to commencement of the Subcontract Work. In the event the Subcontractor fails to obtain or maintain any insurance coverage required under this Agreement, this shall be considered a material breach of the contract, entitling the Contractor, at its sole discretion, to purchase such equivalent coverage as desired for the Contractor's benefit and charge the expense to the Subcontractor, or, in the alternative, exercise all remedies otherwise provided in the contract, or as permitted by law or equity.

## CONTINUATION OF COVERAGE

The Subcontractor shall continue to carry Completed Operations Liability Insurance for a least three (3) years after either ninety (90) days following Substantial Completion of the Work or final payment to the Contractor, whichever is later. The Subcontractor shall furnish the Contractor evidence of such insurance at final payment and in each successive year during which the insurance coverage must remain in effect.

ACKNOWLEGEMENT OF REFERRAL OF THIS PROVISION TO THE SUBCONTRACTOR'S INSRUANCE AGENT OR BROKER

The Subcontractor represents that it has provided a copy of the "Insurance Provisions" to his insurance agent and/ or broker, and that the Subcontractor has instructed the agent/ broker to provide insurance in full compliance with the terms and conditions herein.

The Contractor and Subcontractor hereby acknowledge that this Exhibit is considered a material term of the Subcontract.

10/12/2019

On Behalf of the Subcontractor

_____Mark Brett_____

On Behalf of the Contractor